# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Avadel Specialty Pharmaceuticals, LLC,[1] | Case No. 19-10248 (CSS) |
| Debtor. | |

## MOTION FOR THE ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING UNSECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105(A), 362 AND 364, AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C); AND (III) GRANTING RELATED RELIEF

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby moves the Court (this "Motion"), pursuant to sections 105(a), 362 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), for entry of an interim order, substantially in the form attached hereto as Exhibit "A" (the "Interim DIP Order"), and a final order (the "Final DIP Order" and, together with the Interim DIP Order, the "DIP Orders"), providing:

A. authorization for the Debtor in its capacity as a borrower (the "Borrower") to obtain a non-amortizing revolving credit facility (the "DIP Facility") provided by Avadel US Holdings, Inc. ("AUSH" or, in its capacity as lender, the "DIP Lender") subject to the terms and conditions hereof and in the DIP Documents (as defined below) in a principal amount of up to $2,700,000, of which up to $716,000 is requested to be approved pursuant to the Interim DIP Order;

B. authorization for the Debtor to enter into that certain Binding Agreement on the Terms and Conditions for $2,700,000 Unsecured Debtor-In-Possession Credit Facility between the Borrower and the DIP Lender (as amended, restated or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement"; together with all agreements, documents, and instruments delivered or executed in connection therewith, the

---

[1] The business address and the last four (4) digits of the Debtor's federal tax identification number is Avadel Specialty Pharmaceuticals, LLC, 16640 Chesterfield Grove Road, Suite 200, Chesterfield, MO 63005 (8959).

       "DIP Documents"), a copy of which DIP Credit Agreement is attached hereto as Exhibit "B", and to perform such other and further acts as may be required in connection with the DIP Documents;

C. authorization for the Debtor to use the DIP Facility and the proceeds thereof to pay postpetition operating expenses and other working capital and financing requirements of the Borrower, certain transaction fees, costs and expenses and certain other costs and expenses of administration of this chapter 11 case;

D. the granting of unsecured claims against the Debtor's estate to the DIP Lender with respect to the DIP Obligations (as defined below), *pari passu* with third-party general unsecured prepetition claims, on the terms and conditions set forth in the DIP Documents;

E. for an interim hearing (the "Interim Hearing") to consider entry of the Interim DIP Order, among other things, (1) authorizing the Borrower, on an interim basis, to borrow from the DIP Lender under the DIP Documents up to an aggregate principal amount not to exceed $716,000;

F. for a final hearing (the "Final Hearing") to consider entry of the Final DIP Order authorizing, among other things, the balance of the borrowing under the DIP Documents on a final basis, as set forth in the DIP Motion and the DIP Documents; and

G. related relief.[2]

In support of this Motion, Debtor respectfully states:

## Status of the Case

1. On the date hereof (the "Petition Date"), the Debtor commenced this case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtor has continued in possession of its property and is operating and managing its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these Chapter 11 Cases.

---

[2] Unless otherwise stated, capitalized terms used but not defined in this Motion have the meaning ascribed to them in the First Day Declaration or the DIP Credit Agreement.

**Jurisdiction, Venue and Statutory Predicates**

4.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.  The statutory predicates for the relief set forth herein are sections 105(a), 362, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2.

**Background**

A.  **The Debtor**

6.  ASP is a pharmaceutical company engaged in the business of the commercializing, marketing and distributing NOCTIVA™ (desmopressin acetate) nasal spray. NOCTIVA™ was approved in March 2017 by the U.S. Food and Drug Administration for the treatment of nocturia due to nocturnal polyuria in adults and is ASP's sole commercial product. ASP has experienced several market challenges in its efforts to commercialize and increase sales volume while the overall growth for NOCTIVA™ has been slower than anticipated. As a result, ASP has experienced losses since its inception, and as of the Petition Date, has an accumulated deficit, due in part to costs relating to underachieving sales, unanticipated competition, and certain supply agreements.

7.  In November 2018, ASP commenced a process to find a co-promoter for NOCTIVA™, but the process yielded no material interest. After a strategic review, ASP decided to exit its business. Accordingly, ASP commenced this Chapter 11 Case to pursue a sale of its assets and to wind down its business. ASP is seeking proposals for a sale of all or any combination of its assets including but not limited to a sale of all or substantially all assets, of the Debtor's new drug application for NOCTIVA™ and its inventory, for only its new drug application for

NOCTIVA™, or for only its NOCTIVA™ inventory. After conducting this sale process, ASP intends to liquidate any remaining assets and wind down any remaining operations.

8.     A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Gregory J. Divis in Support of the Debtor's Chapter 11 Petition and Requests for First Day Relief* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

B.     **The Debtor's Prepetition Funding**

9.     Before the Petition Date and as more fully set forth in the First Day Declaration, AUSH funded the Debtor's operations since September 2017. The Debtor has no other secured or unsecured funded indebtedness. As of the Petition Date, the Debtor was largely current with its third-party accounts payable. The Debtor has unsecured obligations consisting of accounts payable to various third-party vendors and other creditors.

C.     **Approval of the DIP Facility is Necessary to Meet the Debtor's Immediate Need for Liquidity**

10.    As set forth above, before the Petition Date, AUSH funded the Debtor's operations. As projected in the budget attached as Exhibit A to the DIP Credit Agreement (the "Budget"), after the Petition Date, the Debtor's projected revenues are likely to be insufficient to fund adequately the Debtor's operations and working capital needs and the additional cash flow required to fund the administrative expenses of this Chapter 11 Case. Absent approval of the DIP Facility, the Debtor will almost certainly experience business disruptions. Moreover, the Debtor believes that approved and demonstrated access to liquidity through the DIP Facility is essential to provide the Debtor's employees, vendors and service providers, and other stakeholders confidence in the

4

Debtor's ability to continue operating while it pursues an asset sale pursuant to section 363 of the Bankruptcy Code (the "**Section 363 Sale**").

11.   Accordingly, the Debtor has an immediate and compelling need for access to the DIP Facility.  Among other things, this access is necessary to continue the operation of its business in an orderly manner, maintain business relationships with customers and vendors, pay employees and satisfy other working capital and operational needs—all of which are necessary to preserve and maintain the Debtor's going-concern value and, ultimately, conduct successfully a Section 363 Sale.  Based on these circumstances, the Debtor requires the funding provided by the proposed DIP Facility to avoid immediate and irreparable harm to its operations, business and estate.

12.   In addition, the Debtor believes alternative financing on more favorable terms is not available.  Among other terms, the DIP Facility provides for (i) priority of the DIP Obligations *pari passu* with third-party general unsecured claims without any further or other security or credit support (*e.g.*, no grant of debtor-in-possession liens or allowance of super-priority administrative expenses or administrative expenses), (ii) no commitment or other fees, (iii) contract interest at an annual rate of 5% and default interest at an annual rate of 7.5%, (iv) no limitations on the use of the proceeds of the DIP Obligations other than adherence to the Budget subject to reasonable and customary permitted variances, (v) reasonable case milestones, and (vi) other terms and conditions that are fair and reasonable.  Thus, the Debtor submits that the DIP Facility is the best option to finance its liquidity needs for this Chapter 11 Case.

**Summary of the Terms and Conditions of the Proposed DIP Facility**[3]

A.  **Summary of Essential Terms under Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-2(a)(ii)**

13. Pursuant to Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-2(a)(ii), the following chart summarizes the essential terms of the proposed DIP Facility, together with references to applicable sections of the relevant source documents.

| Bankruptcy Rule / Local Rule | Summary of Material Terms |
|---|---|
| **DIP Credit Agreement Parties**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | **Borrower:** The Debtor.<br><br>**Guarantor:** None.<br><br>**Agent:** None.<br><br>**Lender:** Avadel US Holdings, Inc.<br><br>*See* DIP Credit Agreement at 1. |
| **Commitment**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | The DIP Facility made available to Borrower in a principal amount of up to $2,700,000 (the "Commitment"), of which up to $716,000 shall be available during the period from the Closing Date (as defined below) through the entry of the final order of the Bankruptcy Court approving the DIP Facility (the "Final Order"). All advances outstanding under the DIP Facility (the "Advances") shall become due and payable on the Termination Date (as defined below) in the priority and on the terms set forth in this Agreement.<br><br>*See* DIP Credit Agreement at 1. |
| **Ranking / Priority**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | All obligations of Borrower under the DIP Facility and all amounts owing by Debtor in respect thereof at all times shall constitute allowed prepetition unsecured claims, which shall not have super-priority administrative expense or administrative expense status, and shall be *pari passu* with third-party prepetition unsecured claims that may be allowed against the Debtor.<br><br>*See* DIP Credit Agreement at 3. |

---

[3] The summaries contained in this Motion are qualified in their entirety by the provisions of the DIP Documents. To the extent anything in this Motion is inconsistent with such documents, the terms of the applicable documents shall control. Each capitalized term used and not otherwise defined in these summaries shall have the meaning assigned thereto in the DIP Credit Agreement.

| Bankruptcy Rule / Local Rule | Summary of Material Terms |
|---|---|
| **Interest Rates and Fees**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | Interest: All Advances will bear interest at a rate per annum equal to 5.00% (the "Contract Rate"), calculated on the basis of the actual number of days elapsed in a year of 365 days and payable monthly in arrears. Upon the occurrence and during the continuance of an Event of Default, interest/fees will accrue on any Advance at a rate of 7.5% per annum (the "Default Rate") instead of the Contract Rate.<br><br>No Fees: There shall be no fees due from the Debtor in consideration of the DIP Facility.<br><br>*See* DIP Credit Agreement at 3. |
| **Term**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | The term of this Agreement shall expire, and Lender's obligation to fund Advances under the DIP Facility shall terminate, upon the earliest date of occurrence of any of the following (each, a "Termination Date"): (i) dismissal of the Bankruptcy Case or conversion of the Bankruptcy Case to a case under Chapter 7; (ii) appointment by the Bankruptcy Court of a Chapter 11 trustee, or an examiner with expanded powers relating to the operation of the business of any Debtor; (iii) the Interim DIP Order shall not have been entered by the Bankruptcy Court on or before the date which is four (4) business days after the petition date; (iv) the Final DIP Order shall not have been entered by the Bankruptcy Court on or before the date which is thirty (30) days after the petition date; (v) twelve (12) months after the petition date, assuming the Final DIP Order has been entered as provided herein; or (vi) the effective date of a plan of reorganization or liquidation in the Bankruptcy Case.<br><br>*See* DIP Credit Agreement at 2. |
| **Events of Default**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | The occurrence of any of the following shall be an event of default ("Event of Default"): (i) violation of any covenants set forth in the DIP Credit Agreement; (ii) Borrower (a) obtains or seeks approval to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code (unless such financing is proposed to refinance and pay the obligations in full in cash under the DIP Facility along with the termination of the DIP Credit Agreement), (b) grants or seeks approval to grant any postpetition lien on any property of Borrower, including cash, without the prior written consent of Lender, (c) files any action or challenge against Lender under the DIP Facility; (iii) any change of control of Borrower; and (iv) failure by Borrower to meet mutually agreed Bankruptcy Case milestones by the mutually agreed dates, as set forth in Exhibit A attached to the DIP Credit Agreement. |

| Bankruptcy Rule / Local Rule | Summary of Material Terms |
|---|---|
| | *See* DIP Credit Agreement at 2. |
| **Use of DIP Facility & Limitations on Use**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | Amounts available under the DIP Facility shall be used in a manner consistent with the Budget and the DIP Orders for payment of the following, as set forth in the Budget: (i) postpetition operating expenses and other working capital and financing requirements of Borrower; (ii) certain transaction fees, costs and expenses; and (iii) certain other costs and expenses of administration of the Bankruptcy Case, including professional fees.<br><br>Borrower may not, without the prior written consent of Lender, except as expressly permitted in the DIP Facility documents or as contemplated by the Budget, make payments on account of any prepetition indebtedness of the Debtor.<br><br>*See* DIP Credit Agreement at 1 & 5. |
| **Conditions Precedent to Initial Borrowing**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | The commitment of Lender to provide the DIP Facility shall be conditioned upon satisfaction of the following conditions precedent (the date upon which all such conditions precedent shall be satisfied, the "Closing Date"):<br><br>1. The petition commencing the Bankruptcy Case shall have been filed with the Bankruptcy Court.<br><br>2. All motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the DIP Facility and the approval thereof, in form and substance reasonably satisfactory to Lender, shall have been filed with the Bankruptcy Court.<br><br>3. The execution of the promissory note made by Borrower in favor of Lender, as attached to the DIP Credit Agreement as Exhibit B.<br><br>4. The entry of the Interim DIP Order by the Bankruptcy Court.<br><br>Lender's commitment to lend is expressly subject to the entry and terms of the DIP Orders (and any other necessary and appropriate court orders) by the Bankruptcy Court, which order or orders must not be subject to any stay and acceptable to Lender in its reasonable discretion; provided, that from the Closing Date until the entry of the Final Order acceptable to Lender in its reasonable discretion, Lender will make up to $716,000 of the DIP Facility commitment available on |

| Bankruptcy Rule / Local Rule | Summary of Material Terms |
|---|---|
| | the terms and conditions specified in the DIP Credit Agreement and in the Interim DIP Order.<br><br>Without limiting in any way Lender's reasonable discretion, the DIP Orders shall provide for the following, among other things:<br><br>1. That all indebtedness, liabilities and obligations of Borrower to Lender arising under the DIP Facility shall be allowed unsecured claims against the Debtor and treated *pari passu* with allowed third-party prepetition claims against the Debtor;<br><br>2. Adequate notice has been given to all necessary parties of the hearing pursuant to which the Bankruptcy Court has entered the applicable order; and<br><br>3. A finding that Lender has acted in good faith and the transaction was negotiated at arm's-length.<br><br>*See* DIP Credit Agreement at 1. |
| **Conditions Precedent to Each Advance**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | Conditions precedent to each Advance under the DIP Facility shall be: (i) the absence of any Event of Default; (ii) receipt of a customary borrowing notice form the Borrower; (iii) there being no legal bar to Lender making the applicable Advance; (iv) the effectiveness of the DIP Order authorizing the DIP Facility and such DIP Order not having been reversed, vacated or stayed and not having been amended, supplemented or otherwise modified without the prior written consent of Lender; and (v) the amount of any such borrowing or issuance is consistent with the Budget and not in excess of the Commitment.<br><br>*See* DIP Credit Agreement at 4-5. |
| **Budget Covenants**<br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | During the period commencing on the Closing Date and ending on the Termination Date, so long as no Event of Default exists under this Agreement, Advances under the DIP Facility shall be available to Borrower in an aggregate amount not to exceed the Budget; provided, however, that any Advance to be made in connection with a budgeted item may exceed the aggregate amount set forth in the Budget by ten percent (10%), as long as the aggregate amount of the Advances does not exceed the Commitment.<br><br>*See* DIP Credit Agreement at 2-3. |

| Bankruptcy Rule / Local Rule | Summary of Material Terms |
|---|---|
| **Reporting Information**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | Borrower shall deliver updates and weekly variance reports to such Budget, each in form reasonably acceptable to Lender.<br><br>*See* DIP Credit Agreement at 2. |
| **Chapter 11 Milestones**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(vi); Local R.4001-2(a)(ii) | The Debtor shall comply with the following milestones in connection with the Section 363 Sale:<br>    (a)    Entry on or before March 29, 2019 of a final order pursuant to Section 363 of the Bankruptcy Code, in form and substance acceptable to the DIP Lender, for the sale of part or all of the Debtor's assets (the "**363 Order**"); and<br>    (b)    Closing of the sale of part or all of the Debtor's assets pursuant to the 363 Order on or before April 10, 2019.<br><br>*See* DIP Credit Agreement, Ex. A. |
| **Liens and Priority Claims**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(i); Local R. 4001-2(a)(i)(D), 4001-2(a)(ii) | None. |
| **Carve Out**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(i)(F) | None. |
| **Stipulations to Prepetition Liens and Claims**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(iii); Local R. 4001-2(a)(i)(B) | None. |
| **Adequate Protection** | None. |

| Bankruptcy Rule / Local Rule | Summary of Material Terms |
|---|---|
| Fed. R. Bankr. P. 4001(c)(1)(B)(ii) | |
| **Waiver/Modification of the Automatic Stay**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(iv) | None. |
| **Waiver/Modification of Applicability of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(vii) | None. |
| **Indemnification**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(ix) | None. |
| **Counsel Fees & Expenses**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B); Local R. 4001-2(a)(ii) | Each of Borrower and Lender shall bear its own costs, fees and expenses incurred in connection with the DIP Facility; notwithstanding the foregoing, Borrower may use DIP Facility proceeds for payment of professional fees and expenses as set forth in the Budget.<br><br>*See* DIP Credit Agreement at 5. |
| **Waiver/Modification of the Automatic Stay; Remedies**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(iv) | Upon entry of the Interim DIP Order, without further approval of the Court, the Debtor is authorized, and the automatic stay imposed by Bankruptcy Code section 362 shall be lifted to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement), and to take all other acts required under or in connection with the DIP Documents.<br><br>*See* Interim DIP Order, ¶ 5(e) |

B.        **Highlighted Provisions under Local Rule 4001-2(a)(i)**

14.    Local Rule 4001-2(a)(i) requires this Motion to recite whether the DIP Orders or the other DIP Documentation contain any of the following seven provisions and, to the extent such provisions are present, to identify their location in the relevant documents justify their inclusion.

(i)        **Local R. 4001-2(a)(i)(A)**—*Cross-Collateralization Protection*. Not Applicable.

(ii)       **Local R. 4001-2(a)(i)(B)**—*Challenge Period*. Not applicable.

(iii)      **Local R. 4001-2(a)(i)(C)**—*506(c) Waiver*. Not applicable.

(iv)      **Local R. 4001-2(a)(i)(D)**—*Liens on Avoidance Actions*. Not applicable.

(v)       **Local R. 4001-2(a)(i)(E)**—*Roll-Up*. Not applicable.

(vi)      **Local R. 4001-2(a)(i)(F)**—*Disparate Carve Out Treatment*. Not applicable.

(vii)     **Local R. 4001-2(a)(i)(G)**—*Nonconsensual Priming*. Not applicable.

(viii)     **Local R. 4001-2(a)(i)(H)**—*Section 552(b)(1)*. Not applicable.

## Relief Requested

15.    The Debtor seeks entry of the Interim DIP Order and, pending the Final Hearing, the Final DIP Order, in each case: (a) authorizing the Debtor to obtain the DIP Facility; (b) authorizing the Debtor to enter into the DIP Documents; (c) authorizing the Debtor to use the DIP Facility and the proceeds thereof; (d) scheduling a Final Hearing to consider entry of the Final DIP Order and a deadline to file any objection to the Final DIP Order; and (e) granting related relief.

## Basis for Relief

A.        **The Debtor's Decision to Obtain the DIP Facility Should Be Approved.**

16.    Courts grant debtors in possession considerable deference in acting in accordance with their business judgment in obtaining post-petition secured credit, as long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g.*, *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994)

(approving post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

17. To determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Tech.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the Debtors'] authority under the [Bankruptcy] Code").

18. Furthermore, in considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co.* (*In re Elingsen McLean Oil Co., Inc.*), 65 B.R. 358, 365 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization). The Court may also appropriately take into consideration non-economic benefits to the Debtor offered by a proposed

post-petition facility. For example, in *In re ION Media Networks. Inc.*, the Bankruptcy Court for the Southern District of New York held that:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization. This is particularly true in a bankruptcy setting where cooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps to foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

19. Here, the DIP Facility is clearly within the Debtor's reasonable business judgment. The DIP Facility provides for reasonable priority, economics, milestones, and other terms that are fair and reasonable. The DIP Facility is the product of arm's length, good faith negotiations between the Debtor and the DIP Lender. The Debtor has reason to believe that the proceeds of the DIP Facility and its use in accordance with the Budget will be adequate to pay all administrative expenses due and payable during the postpetition periods. Accordingly, entry into the DIP Facility is a sound exercise of the Debtor's business, and should be approved.

20. Moreover, entry into the DIP Facility passes any level of scrutiny. Although the DIP Lender is an insider of the Debtor, each party was represented by independent counsel who fully informed their respective clients of the relevant facts and circumstances. The DIP Facility has no terms that unfairly advantage the DIP Lender. In fact, the priority of the DIP Obligations, the absence of fees and reasonable interest rate, and other terms and conditions of the DIP Facility are fair to the Debtor. Accordingly, entry into the DIP Facility is entirely fair and should be approved

### B. The DIP Lender Should Be Deemed Good-Faith Lenders under Section 364(e).

21. Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

22. As set forth above, the DIP Facility is the result of the sound exercise of the Debtor's business judgment, and the product of arm's length, good-faith negotiations between the Debtor and the DIP Lender. In addition, the terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code and are adequate to meet the Debtor's post-petition financing needs. Accordingly, the Court should find that the DIP Agent and DIP Lenders are "good faith" entities within the meaning of section 364(e) of the Bankruptcy Code and are entitled to all of the protections afforded by that section.

### C. The Automatic Stay Should Be Modified on a Limited Basis.

23. The Debtor requests that automatic stay imposed by section 362 be modified to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents, the Interim DIP Order and the Final DIP Order, as applicable. Such and similar stay modifications are common-place and standard features of debtor-in-possession financing arrangements, and are reasonable and fair under the circumstances of these Chapter 11 Cases.

     **D.**     **Failure to Obtain Immediate Interim Access to the DIP Facility and Cash Collateral Would Cause Immediate and Irreparable Harm.**

    24.    Bankruptcy Rules 4001(b) and (c) provides that a final hearing on motion to use cash collateral pursuant to section 363 and to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on such motions and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

    25.    The Debtor also has an immediate need to receive advances contemplated by the DIP Facility to provide sufficient liquidity to maintain operations during the period between the Petition Date and the Final Hearing in order to continue to operate and pay administrative expenses. Entry of the proposed Interim DIP Order will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to the estate and all parties in interest, pending the Final Hearing.

<b><u>Request for Final Hearing</u></b>

    26.    Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that the Court schedule a date for the Final Hearing that is as soon as practicable, and fixes the time and date prior to the Final Hearing for parties to file objections to this Motion.

<b><u>Consent to Jurisdiction</u></b>

    27.    Pursuant to Rule 9013-1(f) of the Local Rules, the Debtor consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**Notice**

28. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) Avadel US Holdings, Inc. as the debtor-in-possession lender; (c) the creditors holding the twenty (20) largest general unsecured claims against the Debtor; (d) the Office of the United States Attorney for the District of Delaware; (e) the Internal Revenue Service; (f) the Securities & Exchange Commission; (g) the Delaware Secretary of State; (h) the Delaware State Treasury; and (i) any other party entitled to notice pursuant to Local Rule 9013-1(m)(iii). As the Motion is seeking "first day" relief, within two (2) business days of the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered with respect to the Motion in accordance with Local Rule 9013-1(m)(iv). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

29. No prior Motion for the relief requested herein has been made to this or any other court.

**Conclusion**

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting the relief requested herein and granting the Debtor such other and further relief as is just and proper.

Dated: February 6, 2019                    GREENBERG TRAURIG, LLP

                                           */s/ Dennis A. Meloro*
                                           Dennis A. Meloro (DE Bar No. 4435)
                                           The Nemours Building
                                           1007 North Orange Street, Suite 1200
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 661-7000
                                           Facsimile: (302) 661-7360
                                           Email: melorod@gtlaw.com

-and-

Paul J. Keenan Jr. (*pro hac vice* pending)
John R. Dodd (*pro hac vice* pending)
Reginald Sainvil (*pro hac vice* pending)
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: keenanp@gtlaw.com
        doddj@gtlaw.com
        sainvilr@gtlaw.com

-and-

Sara A. Hoffman (*pro hac vice* pending)
Greenberg Traurig, LLP
The MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: hoffmans@gtlaw.com

*Proposed Counsel for the Debtor
and Debtor-in-Possession*