IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Avadel Specialty Pharmaceuticals, LLC,[1] | Case No. 19-10248 (CSS) |
| Debtor. | |

**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) AND LOCAL RULE 2002-1(f)**

The above-captioned debtor and debtor-in-possession (the "**Debtor**") hereby moves the Court (this "**Application**" or "**Section 156(c) Application**") pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") for entry of an order authorizing and approving the employment and retention of Epiq Corporate Restructuring, LLC ("**Epiq**") as claims and noticing agent (the "**Claims and Noticing Agent**") *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtor respectfully states as follows:

**Status of the Case**

1. On the date hereof (the "**Petition Date**"), the Debtor commenced this case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

---

[1] The business address and the last four (4) digits of the Debtor's federal tax identification number is Avadel Specialty Pharmaceuticals, LLC, 16640 Chesterfield Grove Road, Suite 200, Chesterfield, MO 63005 (8959).

2. The Debtor has continued in possession of its property and is operating and managing its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in this Chapter 11 Case.

**Jurisdiction, Venue and Statutory Predicates**

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code, section 156(c) of Title 28 of the United States Code and Local Rule 2002-1(f).

**Background**

6. ASP is a pharmaceutical company engaged in the business of the commercializing, marketing and distributing NOCTIVA™ (desmopressin acetate) nasal spray. NOCTIVA™ was approved in March 2017 by the U.S. Food and Drug Administration for the treatment of nocturia due to nocturnal polyuria in adults and is ASP's sole commercial product. ASP has experienced several market challenges in its efforts to commercialize and increase sales volume while the overall growth for NOCTIVA™ has been slower than anticipated. As a result, ASP has experienced losses since its inception, and as of the Petition Date, has an accumulated deficit, due in part to costs relating to underachieving sales, unanticipated competition, and certain supply agreements.

7. In November 2018, ASP commenced a process to find a co-promoter for NOCTIVA™, but the process yielded no material interest. After a strategic review, ASP decided

to exit its business. Accordingly, ASP commenced this Chapter 11 Case to pursue a sale of its assets and to wind down its business. ASP is seeking proposals for a sale of all or any combination of its assets including but not limited to a sale of all or substantially all assets, of the Debtor's new drug application for NOCTIVA™ and its inventory, for only its new drug application for NOCTIVA™, or for only its NOCTIVA™ inventory. After conducting this sale process, ASP intends to liquidate any remaining assets and wind down any remaining operations.

8. A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of this Chapter 11 Case, is more fully set forth in the *Declaration of Gregory J. Divis in Support of the Debtor's Chapter 11 Petition and Requests for First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

### Relief Requested

9. By this Application, pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code and Del. Bankr. L.R. 2002-1(f), the Debtor requests entry of an order substantially in the form of **Exhibit A** hereto (the "**Proposed Order**") appointing Epiq as the Claims and Noticing Agent and authorizing Epiq to assume full responsibility for, among other things, the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtor's case.

10. The Debtor's selection of Epiq to serve as the Claims and Noticing Agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, in that the Debtor has obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtor submits, based on all engagement proposals obtained

and reviewed, that Epiq's rates are competitive and reasonable, given Epiq's quality of services and expertise. The terms of retention, including Epiq's fees, are set forth in the Epiq Services Agreement annexed hereto as **Exhibit B** (the "**Engagement Agreement**"); provided, however, that Epiq is seeking approval solely of the terms and provisions as set forth in this Application and as modified by the proposed order attached hereto.[2]

11.    Although the Debtor has not yet filed its schedules of assets and liabilities, it anticipates that there will be in excess of 300 entities to be noticed. In view of the number of anticipated claimants, the Debtor submits that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtor's estate and its creditors.

12.    Epiq has acted as the claims and noticing agent in numerous recent cases of comparable size, including several cases administered (currently or previously) in the United States Bankruptcy Court for this District. *See, e.g.*, *In re The Weinstein Company Holdings LLC*, Case No. 18-10601 (MFW) (Bankr. D. Del. Mar. 20, 2018) [Docket No. 70]; *In re HCR ManorCare, Inc.*, Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 6, 2018) [Docket No. 44]; *In re Herald Media Holdings, Inc.*, Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 13, 2017) [Docket No. 39]; *In re Maurice Sporting Goods, Inc.*, Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 21, 2017) [Docket No. 25]; *In re GST AutoLeather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Oct. 4, 2017) [Docket No. 63], among other cases.

13.    By appointing Epiq as the Claims and Noticing Agent in this Chapter 11 Case, the distribution of notices and the processing of claims will be expedited, and the clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of

---

[2] To the extent the administration of this Chapter 11 Case requires Epiq to perform duties outside the scope of 28 U.S.C. § 156(c), the Debtor will seek separate authorization to retain and employ Epiq as administrative agent in this Chapter 11 Case pursuant to section 327(a) of the Bankruptcy Code.

4

claims. In support of this Application, the Debtor submits the declaration of Brian Karpuk, Epiq's Director of Consulting Services attached hereto as **Exhibit C** (the "**Karpuk Declaration**").

14. This Application pertains only to the work to be performed by Epiq as the Claims and Noticing Agent under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f), and any work to be performed by Epiq outside of this scope is not covered by this Section 156(c) Application or by any order granting approval hereof. Specifically, as the Claims and Noticing Agent, Eipq will perform the following tasks (the "**Claims and Noticing Services**"), as well as all quality control relating thereto:

    i. Prepare and serve required notices and documents in the case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of the case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of objections to claims and objections to transfers of claims, (iv) notices of any hearings on a disclosure statement and confirmation of the Debtor's chapter 11 plan or plans, including under Bankruptcy Rule 3017(d), (v) notices of hearings on motions filed by the United States Trustee, (vi) notice of transfers of claims, (vii) any motion to convert, dismiss, appoint a trustee, or appoint an examiner filed by the United States Trustee's Office, and (viii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the case;

    ii. Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, "**Schedules**"), listing the Debtor's known creditors and the amounts owed thereto;

    iii. Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

iv. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

v. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

vi. For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

vii. Process all proofs of claim or proofs of interest received, including those received by the Clerk's office, and check said processing for accuracy, and maintain the original proofs of claim or proofs of interest in a secure area;

viii. Maintain the official claims register for the Debtor (the "**Claims Register**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc*.), and (vi) any disposition of the claim;

ix. File a quarterly updated claims register with the Court, in alphabetical and numerical order;

x. Allow public access to claims and the claims register at no charge;

xi. Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

xii. Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the 21-day notice and objection

        period required under Bankruptcy Rule 3001(e), then Epiq may process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

xiii.    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of the Claims and Noticing Agent, not less than weekly;

xiv.    Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

xv.    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

xvi.    Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

xvii.    Provide such other related claims and noticing services as the Debtor may requires in connection with this Chapter 11 Case;

xviii.    If the case is converted to chapter 7, contact the Clerk's office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

xix.    Thirty (30) days prior to the close of this case, to the extent practicable, request that the Debtor submits to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this case;

xx.    Within fourteen (14) days of entry of an Order dismissing a case or within twenty-eight (28) days of entry of a Final Decree, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. The Claims and Noticing Agent shall further box and transport all original claims to the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, Pennsylvania 19154 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims;

xxi. Within fourteen (14) days of entry of an Order converting a case, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. The Claims and Noticing Agent shall further box and transport all original claims to the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, Pennsylvania 19154 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims; and

xxii. Upon conversion of a chapter 11 case to a chapter 7 case, if there are more than two hundred (200) creditors, the Claims and Noticing Agent shall (i) continue to serve all notices required to be served, at the direction of the chapter 7 trustee or the Clerk's office or (ii) submit a termination order. If a termination order has been granted, the Claims and Noticing Agent shall comply with Local Rule 2002-1(f)(x).

15. Additionally, to the extent any notice served is required to be given via regular mail, Epiq is authorized, before mailing the notice of commencement or key matrix mailings, to run the list of creditors and equity security holders through (i) the National Change of Address software maintained by the United States Postal Service (the "**USPS**") and (ii) standardization and verification software that is CASS (Coding Accuracy Support System) certified by the USPS (clauses (i) and (ii) collectively, the "**USPS Software**") to update any addresses provided by the Debtor based on its books and records and to conform such records to USPS standards. If the USPS Software determines that a mailing address has changed, the Debtor proposes that Epiq shall mail documents to the updated address; provided, however, that Epiq shall be under no obligation to mail to the original address. If mail is returned to Epiq as undeliverable with a forwarding address, the Debtor proposes that Epiq shall re-mail the document to the new address and update its mailing database accordingly. If mail is returned to Epiq as undeliverable with no forwarding address, the Debtor proposes that Epiq should be under no further obligation to mail any notices or other pleadings to that address.

16.     The Claims Register shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

17.     Although by this Section 156(c) Application the Debtor does not propose to retain Epiq as a professional under Bankruptcy Code section 327, to the best of Epiq's knowledge, and except as set forth in the Karpuk Declaration, Epiq neither holds nor represents an interest materially adverse to the Debtor's estate nor has a connection to the Debtor, its creditors, or its related parties with respect to any matter for which Epiq will be employed.  Epiq may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.  However, Epiq shall not employ any past or present employees of the Debtor for work that involves the Chapter 11 Case.  Should Epiq discover any new relevant factors or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to promptly file a supplemental declaration.

18.     The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtor's estate pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.  Epiq agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet

and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

19. Prior to the Petition Date, the Debtor provided Epiq a retainer in the amount of $25,000.00. Epiq seeks to first apply the retainer to all pre-petition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

20. In connection with its retention as Claims and Noticing Agent, Epiq represents in the Karpuk Declaration, among other things, that:

    i. Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

    ii. By accepting employment in this Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with the Debtor's case;

    iii. In its capacity as Claims and Noticing Agent in this Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

    iv. It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

21. To the extent that there is any inconsistency between this Application, the Proposed Order and the Engagement Agreement, the Proposed Order shall govern.

22. This Section 156(c) Application complies with the *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* and conforms to the standard Section 156(c) Application used in this Court.

### Notice[3]

23.    Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) Avadel US Holdings, Inc. as the debtor-in-possession lender; (c) creditors holding the twenty (20) largest unsecured claims against the Debtor; (d) the Office of the United States Attorney for the District of Delaware; (e) the Internal Revenue Service; (f) the Securities & Exchange Commission; (g) the Delaware Secretary of State; (h) the Delaware State Treasury; and (i) any other party entitled to notice pursuant to Local Rule 9013-1(m)(iii). As the Application is seeking "first day" relief, within two (2) business days of the hearing on the Application, the Debtor will serve copies of the Application and any order entered with respect to the Application in accordance with Local Rule 9013-1(m)(iv). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

24.    No previous application for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

---

[3] Capitalized terms used in the Notice section but not otherwise defined in this Application shall have the meanings ascribed to them in the First Day Declaration.

## **Conclusion**

WHEREFORE, the Debtor respectfully requests entry of an order (i) granting the relief requested herein; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: February 6, 2019                     GREENBERG TRAURIG, LLP

*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: melorod@gtlaw.com

-and-

Paul J. Keenan Jr. (*pro hac vice* pending)
John R. Dodd (*pro hac vice* pending)
Reginald Sainvil (*pro hac vice* pending)
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: keenanp@gtlaw.com
         doddj@gtlaw.com
         sainvilr@gtlaw.com

-and-

Sara A. Hoffman (*pro hac vice* pending)
Greenberg Traurig, LLP
The MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email:  hoffmans@gtlaw.com

*Proposed Counsel for the Debtor
and Debtor-in-Possession*