**<u>Exhibit A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Avadel Specialty Pharmaceuticals, LLC,[1] | Case No. 19-10248 (CSS) |
| Debtor. | Ref. Docket No. _____ |

### ORDER AUTHORIZING THE DEBTOR TO EMPLOY AND RETAIN EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) AND LOCAL RULE 2002-1(f)

Upon the application (the "**Application**")[2] of the above-captioned debtor and debtor-in-possession (the "**Debtor**"), for an order authorizing the retention and appointment of Epiq Corporate Restructuring, LLC ("**Epiq**"), as the Claims and Noticing Agent, pursuant to 28 U.S.C. §156(c), section 105(a) of the Bankruptcy Code and Local Rule 2002-1(f), to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket and otherwise administer the proofs of claim filed in the Debtor's case, and (iii) provide such other administrative services – as required by the Debtor – that would fall within the purview of services to be provided by the Clerk's office; and upon the declaration of Brian Karpuk submitted in support of the Application; and the Debtor having estimated that there are in excess of 200 creditors in this case, many of which are expected to file proofs of claim, and it appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtor's expense, outside agents and facilities to provide notices to

---

[1]   The business address and the last four (4) digits of the Debtor's federal tax identification number is Avadel Specialty Pharmaceuticals, LLC, 16640 Chesterfield Grove Road, Suite 200, Chesterfield, MO 63005 (8959).

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

parties in chapter 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that Epiq has the capability and experience to provide such services and that Epiq does not hold an interest adverse to the Debtor or the estate with respect to the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given; and no other or further notice being required; and it appearing that the employment of Epiq is in the best interests of the Debtor, the estate and its creditors; and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.　　The Application is GRANTED as set forth herein.

2.　　Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.

3.　　The Debtor is authorized to retain Epiq effective as of the Petition Date under the terms of the Engagement Agreement to the extent set forth herein, and Epiq is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in this Chapter 11 Case, and all related tasks, all as described in the Application (the "**Claims and Noticing Services**").

4.　　Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case and is authorized and directed to maintain an official claims register for the Debtor and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.　　Epiq is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      Epiq is authorized to take such other action to comply with all duties set forth in the Application.

7.      The Debtor is authorized to compensate Epiq in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses; provided, however, that the United States Trustee for the District of Delaware, counsel to the proposed debtor-in-possession lender and counsel to any official committee appointed in this Chapter 11 Case (together, the "**Notice Parties**") shall be provided copies of Epiq's invoices and shall have a period of ten (10) days to object to the amount of such invoice prior to the Debtor's payment of such amounts or such shorter time as agreed by the Notice Parties.

8.      Epiq shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred.

9.      The parties shall meet and confer in an attempt to resolve any dispute, which may arise relating to the Engagement Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

10.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtor's estate.

11.      Epiq may apply its retainer to all pre-petition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, Epiq may hold its retainer under the

Engagement Agreement during this Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

12.     In the event Epiq is unable to provide the services set out in this order, Epiq will immediately notify the Clerk and the Debtor's attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and counsel to the Debtor.

13.     Epiq shall comply with all relevant statutory provisions and rules of procedure, including the Local Rules, general orders and applicable guidelines.

14.     Counsel to the Debtor shall notify both Epiq and the Clerk's office within seven (7) days of an order of dismissal or conversion of this Chapter 11 Case.

15.     At the end of this Chapter 11 Case or upon the termination of Epiq's services, the Debtor must obtain a termination order to terminate the services provided.

16.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify the Indemnified Persons, or provide contribution or reimbursement to Indemnified Persons, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from any Indemnified Person's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of any Indemnified Person's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.,* et al., 315 F. 3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Indemnified Persons should not receive

indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

17.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this case, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, such Indemnified Person must file an application therefore in this Court, and the Debtor may not pay any such amounts to such Indemnified Person before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by such Indemnified Person for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify such Indemnified Person.  All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution or reimbursement.

18.     The Debtor may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Epiq but which is not specifically authorized by this Order.

19.     The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

20.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

21.     Epiq shall not cease providing claims processing services during the case for any reason, including nonpayment, without an order of the Court.

22.     In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

## **Exhibit B**

**Engagement Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

### 1. Services.

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

### 2. Term.

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

### 3. Charges.

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2020.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4.  Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



## 5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

## 6. Disposition of Data.

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7. Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



### 9.  Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

### 10. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

### 11. General

11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



11.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

        <u>If to Epiq</u>:

                Epiq Corporate Restructuring, LLC
                777 Third Avenue, 12th Floor
                New York, New York 10017
                Attn:  Robert A. Hopen

        <u>If to Client</u>:

                Avadel Speciality Pharmaceuticals, LLC
                16640 Chesterfield Grove Road
                Suite 200
                Chesterfield, MO  63005
                Attn:  Michael Kanan

        <u>With a copy to</u>:

                Greenberg Traurig, LLP
                Metlife Building
                200 Park Avenue
                New York, NY  10166
                Attn:  Sara Hoffman

11.11   Invoices sent to Client should be delivered to the following address:

                Avadel Speciality Pharmaceuticals, LLC
                16640 Chesterfield Grove Road
                Suite 200
                Chesterfield, MO  63005
                Attn: Accounts Payable

        Email:        mkanan@avadel.com

11.12   The "Effective Date" of this Agreement is January 30, 2019.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Robert A. Hopen
Title:    President


**AVADEL SPECIALITY PHARMACEUTICALS, LLC**

Name:  Michael Kanan

Title:    Treasurer



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.



➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

➢ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.



> ➢ Coordinate publication of certain notices in periodicals and other media.

> ➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

> ➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties. Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

> ➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

## MISCELLANEOUS

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
| --- | --- |
| Clerical/Administrative Support | $25.00 – $45.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $70.00 – $165.00 |
| Consultants/ Directors/Vice Presidents | $160.00 – $190.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $215.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
| --- | --- |
| Printing | $0.09 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
| --- | --- |
| Data Storage, Maintenance and Security | $0.09 per record/month |
| Electronic Imaging | $0.09 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | $5.00 per CD |

## ON-LINE CLAIM FILING SERVICES

| | |
| --- | --- |
| On-Line Claim Filing | NO CHARGE |

---

[1]    Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

## CALL CENTER RATES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $55 per hour |
| Voice Recorded Message | $0.34 per minute |

## OTHER SERVICES RATES

| | |
|---|---|
| Custom Software, Workflow and Review Resources | Quoted at time of request |
| Depositions/Court Reporting | Quoted at time of request, bundled pricing available |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |

## **Exhibit C**

**Karpuk Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Avadel Specialty Pharmaceuticals, LLC,[1] | Case No. 19-10248 (CSS) |
| Debtor. | |

## DECLARATION OF BRIAN KARPUK IN SUPPORT OF THE APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO 28 U.S.C. § 156(C ), 11 U.S.C. 105(a) AND LOCAL RULE 2002-1(f)

Brian Karpuk, being duly sworn, deposes and states:

1.      I am the Director of Consulting Services of Epiq Corporate Restructuring, LLC ("**Epiq**"), and I am authorized to make and submit this declaration on behalf of Epiq (the "**Declaration**"). The statements contained herein are based upon personal knowledge. I submit this Declaration in support of the application (the "**Section 156(c) Application**")[2] of the above-captioned debtor and debtor in possession (the "**Debtor**") for entry of an order authorizing the employment and retention of Epiq as the Debtor's claims and noticing agent ("**Claims and Noticing Agent**") in the Debtor's chapter 11 case (the "**Chapter 11 Case**") *nunc pro tunc* to the Petition Date pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") and to approve the assumption of the Services

---

[1]   The business address and the last four (4) digits of the Debtor's federal tax identification number is Avadel Specialty Pharmaceuticals, LLC, 16640 Chesterfield Grove Road, Suite 200, Chesterfield, MO 63005 (8959).

[2]   Capitalized terms utilized but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application or the First Day Declaration filed in this Chapter 11 Case.

Agreement, dated as of January 30, 2019 (the "**Engagement Agreement**"). The Engagement Agreement is attached to the Section 156(c) Application as **Exhibit B**.

2.        As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform at the request of the Clerk the noticing and claims services specified in the Section 156(c) Application and Engagement Agreement.  In addition, at the Debtor's request, Epiq will perform such other claims and noticing services specified in the Section 156(c) Application.  For the avoidance of doubt, pursuant to the Engagement Agreement, Epiq will perform the Claims and Noticing Services for the Debtor in this Chapter 11 Case.

3.        Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including the following recent cases filed in this District: *In re HCR ManorCare, Inc.*, Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 6, 2018); *In re Herald Media Holdings, Inc.,* Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 8, 2017); *In re Maurice Sporting Goods, Inc.*, Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 20, 2017); *In re Model Reorg Acquisition, LLC*, Case No. 17-11794 (CSS) (Bankr. D. Del. Aug. 29, 2017); *In re The Original Soupman, Inc.*, Case No. 17-11313 (LSS) (Bankr. D. Del. Jun. 20, 2017); *In re CST Indus. Holdings Inc.*, Case No. 17-11292 (BLS) (Bankr. D. Del. Jun. 13, 2017); *In re Tidewater Inc.*, Case No. 17-11132 (BLS) (Bankr. D. Del. May 19, 2017); *In re Key Energy Servs., Inc.*, Case No. 16-12306 (BLS) (Bankr. D. Del. Oct. 25, 2016).

4.        In connection with the preparation of this Declaration, I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "**Potential Parties in Interest**") in this Chapter 11 Case.  The list of Potential Parties in Interest

was provided by the Debtor and is attached hereto as **Schedule 1**.  Epiq is not aware of any relationship that would present a disqualifying conflict of interest.  To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were current or former clients of Epiq within the past three years, these parties have been identified on a list annexed hereto as **Schedule 2** (the "**Client Match List**").  However, given Epiq's neutral position as claims and noticing agent or administrative advisor for any parties listed on the Client Match List, Epiq does not view such relationships as real or potential conflicts.  Further, to the best of my knowledge, any such relationship between Epiq and any parties on the Client Match List is completely unrelated to this Chapter 11 Case.

5.     The Debtor selected Epiq to serve as the Claims and Noticing Agent for the Debtor's estate, as set forth in more detail in the Section 156(c) Application.  To the best of my knowledge, neither Epiq nor any of its professionals have any relationship with the Debtor that would impair Epiq's ability to serve as Claims and Noticing Agent.

6.     Epiq has working relationships with certain of the professionals retained by the Debtor and other parties herein but such relationships are completely unrelated to this Chapter 11 Case.  Epiq has represented, and will continue to represent, clients in matters unrelated to this Chapter 11 Case, and has had, and will continue to have, relationships in the ordinary course of its business with certain professionals in connection with matters unrelated to this Chapter 11 Case.

7.     Epiq is a "disinterested person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Epiq and its professionals:

(a)     are not creditors, equity security holders, or insiders of the Debtor;

3

    (b)    are not, and were not, within two years before the date of the filing of this Chapter 11 Case, directors, officers, or employees of the Debtor; and

    (c)    do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

8.    Epiq has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this Chapter 11 Case.  If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtor in this Chapter 11 Cases; provided, however, that the Debtor intends to file a separate application to retain Epiq pursuant to Bankruptcy Code section 327 to provide additional services outside the scope of 28 U.S.C. §156(c).

9.    Epiq further represents as follows:

    (a)    it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent;

    (b)    by accepting employment in this Chapter 11 Case, Epiq waives any right to receive compensation from the United States government;

    (c)    in its capacity as Claims and Noticing Agent, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

    (d)    Epiq will not employ any past or present employees of the Debtor in connection with its work as Claims and Noticing Agent.

10.    Subject to Court approval, the Debtor has agreed to compensate Epiq for professional services rendered pursuant to 28 U.S.C. §156(c) in connection with this Chapter 11 Case according to the terms and conditions of the Engagement Agreement.  Payments are to be based upon the submission of a billing statement by Epiq to the Debtor after the end of each calendar month which includes a detailed listing of services and expenses.  Epiq has received a

$25,000 retainer from the Debtor and will first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000 and, thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

11.    Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on this __4__ day of February 2019.

_____

Brian Karpuk, Director of Consulting Services
Epiq Corporate Restructuring, LLC

## SCHEDULE 1

## LIST OF POTENTIALLY INTERESTED PARTIES

**Debtor**

Avadel Specialty Pharmaceuticals, LLC

**Debtor Affiliates**

Avadel Generics LLC
Avadel Legacy Pharmaceuticals
Avadel Management Corporation
Avadel Operations Company, Inc.
Avadel Pediatrics Inc.
Avadel Pharmaceuticals (USA), Inc.
Avadel Pharmaceuticals Plc
Avadel US Holidngs Inc
FSC Holding Company
FSC Therapeutics, LLC

**Officers**

David P. Gusky
Gregory J. Divis
Jerad Seurer
Michael F. Kanan
Micah Richardson
Phillandas T. Thompson

**Bank**

Commerce Bank

**Contract Counter Parties**

Adam Mogil
Alan Wein, MD
Alert Marketing, Inc.
Alfred Kohan
Amanda Maggart
AmerisourceBergen Corp.
Andrea Pezzella
Andrew Shapiro
AptarGroup, Inc. and Renaissance
Lakewood, LLC
Aquestive Therapeutics, Inc.
Aquinox Pharmaceuticals (Canada) Inc.
Avant Healthcare Marketing, Inc. and Avail
Services, Inc.

Avion Pharmaceuticals, LLC
Benjamin Brucker, MD
Beshara Helou
Beth Winkley
Brian Murray
Business One Technologies, Inc.
Cardinal Health
Carole Gordon
Caroline Burk, Inc.
CFX, Inc.
Chamber Hill Strategies
Cipher Pharmaceuticals Inc.
Cogentix Medical, Inc.
Daniel Jaffee
David Albala
David DiMarco
David Ginsberg
David Sussman
Department of Health and Human Services
Diane Newman
Digital Sciences Press Inc.
DJI Consulting Inc.
Docusign, Inc.
Dohman Life Sicence Services, LLC
Eagle Pharmacy LLC
Edward Cohen
Edward Kim
Edward Levin
EPL Archives, LLC
Eric Rovner
Erika Ruiz
Express Scripts Senior Care Holdings, Inc.
Express Scripts, Inc.
Fathom Healthcare Solutions, Inc.
Field Factor Training, LLC
FingerPaint
Gary Lemack
GFB Biomedical Consulting, LLC
Gina Powley
Gregory LaMendola
H.D. Smith, LLC
IntelGenx Corp.
IQVIA (Quintiles Commercial US, Inc.)

J M Smith Corporation
James Meaglia
Jeannette Potts
Jean-Paul Tran
Jed Kaminetsky
Jeffrey Proctor
Jennifer Miles-Thomas
Jessica DeLong
Jones Public Affairs, Inc.
Joshua Perkel
Kaiser Foundation Health Plan, Inc.
Kathleen Kobashi
Knight Therapeutics, Inc.
Laurence Belkoff
Leverage Point Media I LLC
Liam Hurley
Lipella Pharmaceuticals Inc.
lnnomar Strategies Inc.
lntegra Life Science Services, LLC
LW Graphic Design (Elizabeth Whalen)
Marius Pharmaceuticals, LLC
Matt Rosenberg
McKesson (includes 3 Avadel affiliates)
Medivizor International Limited
Med-Script Associates Ltd.
MedVantx, Inc.
Michael Gambla
Michael Kennelly
Nelson Laboratories, LLC
OptimizeRx Corporation
P/L Biomedical (Lee Leichter)
Patient Health Perspectives, LLC
Peter Sand
Pharmacoeconomics and… (Jeff Lee,
Pharm.D., FCCP)
Pharmacy Innovations (Southern Tier Home
Infusion, Inc.)
PPD Development, L.P.
Priority Healthcare Distribution, Inc.
(Express Scripts company)
Proscribe (US), LLC
Ravi Kacker
Relay Health (NDCHealth Corporation)
Remund Group, LLC
Renaissance Lakewood, LLC
Richard Bennett

Roger Dmochowski, MD
saleSEER, Inc.
Scott MacDiarmid
Serenity Pharmaceuticals, LLC
Serenity Pharmaceuticals, LLC and Reprise
Biopharmaceutics, LLC
Source Healthcare Analytics, LLC (a
Symphony Health company)
Stephen Brunton
Stephen Kraus
Steven Brooks
Steven Kaplan
Steven Maislos
Susann Varano
Target Health Inc.
The Hibbert Group
Tivity Health Services, LLC
Toby Chai
TrialCard, Inc.
Truveris, Inc.
Urigen Pharmaceuticals, Inc.
UroGPO, LLC
Veru, Inc.
Vincent Bivins
Walgreen Co.
Xcenda, L.L.C.

### **Customers**

Ahold Financial Services
Albertsons Distribution
American Health Packaging
Amerisourcebergen
Amerisourcebergen Health Corp
Anda Pharmaceuticals Inc.
Associated Pharmacies Inc
Auburn Pharmaceuticals
Avadel Specialty
Bloodworth Wholesale
Burlington Drug Company
Cardinal Health
Caremark Corporate Mail Svs
Cedardale Distributors
Cigna Central
CVS Pharmacy Inc
Dakota Drug, Inc.
Dik Drug Company

Discount Drug Mart
Drugs Unlimited
DV Medical Supply, Inc.
Eagle Pharmacy LLC
Express Scripts
Express Scripts, Inc
Genetco Inc
Giv, Inc
H. D. Smith Wholesale Drug
H.E. Butt Grocery Company
Hbc Service Company
Henry Schein
Kaiser Perm Fdn Health Plan
Kaiser Permanente
Kaiser Permanente-PBS
Kerr Drug Distribution
Louisiana Wholesale Drug
Mckesson Corporation
Mckesson Financial Center
Medco Health of Willingboro
Medco Health Solutions
Medco Health Solutions of Ohio
Meijer
Miami-Luken, Inc
Morris & Dickson Co., Ltd
Mwi Veterinary Supply Co
North Carolina Mutual Drug Co
Omnicare Dist Center LLC
Parmed
Peyton's Northern
Peyton's Phoenix
Peyton's Southeastern
Pharmacy Buying Association
Prescription Solutions
Prescription Supply
Publix Rx Warehouse
Quest Pharmaceuticals
Richie Pharmacal Co.
Rite Aid Hdqtrs Corp.
Rochester Drug Co-Op
Rx Outreach
Smith Drug Company
Supervalu Inc.
Tel-Drug of PA L.L.C.
Tel-Drug, Inc
The Harvard Drug Group

Thrifty White Pharmacy
USA Drugs/SAJ Distributors
Valley Wholesale Drug
Value Drug Company
Walgreens
Walgreens Mail Service
Wal-Mart Stores
Wholesale Drug Distributor

## Employees

Aaron Bean
Angela Spadea
Anne Lapke
Barry Bloomston
Bryan Wood
David Moore
David Schlaker
Douglas Buriani
Ellen Amos
Geoffrey Cochran
Harry Lenzen
James Paul
Jane Ross-Bopp
Jeffrey Williams
Joseph Auci
Justine Boampong
Kirsten Carlson
Kristen Butler
Kristen Knight
Lacey Pecina
Lisa Orr
Marcia Barbe
Mariah Allen Harris
Marta Delahunty
Maureen Otoole-Miller
Michael Cahill
Michael Stanek
Ryan Rausch
Sean Mayers
Sherri Mosholder
Sherri Thompson
Thomas Holt
Thomas Mcguire
Todd Gramins

## General Creditors

Alan Wein, MD
Alert Marketing, Inc.
AptarGroup, Inc. and Renaissance
Lakewood, LLC
Aquestive Therapeutics, Inc.
Aquinox Pharmaceuticals (Canada) Inc.
Avion Pharmaceuticals, LLC
Benjamin Brucker, MD
Cipher Pharmaceuticals Inc.
Cogentix Medical, Inc.
DAVID SCHLAKER
Dohmen Life Science Services
Express Scripts Senior Care Holdings, Inc.
IntelGenx Corp.
IQVIA (Quintiles Commercial US, Inc.)
J M Smith Corporation
Jeff Lee, Pharm.D., FCCP
Kaiser Foundation Health Plan, Inc.
Knight Therapeutics, Inc.
Lee Leichter
Leverage Point Media I LLC
Lipella Pharmaceuticals Inc.
lnnomar Strategies Inc.
lntegra Life Science Services, LLC
Marius Pharmaceuticals, LLC
Massachusetts Board of Pharmacy
Medivizor International Limited
OptimizeRx Corporation
P/L Biomedical
Pharmacoeconomics and…
Pharmacy Innovations (Southern Tier Home
Infusion, Inc.)
Priority Healthcare Distribution, Inc.
(Express Scripts company)
Relay Health (NDCHealth Corporation)
Reprise Biopharmaceutics, LLC
Roger Dmochowski, MD
saleSEER, Inc.
Serenity Pharmaceuticals, LLC
The End Result Inc
Tivity Health Services, LLC
Truveris, Inc.
Urigen Pharmaceuticals, Inc.
Veru, Inc.
Walgreen Co.

**Government Agency**

Alabama Board of Pharmacy
Alaska Board of Pharmacy
Arizona Board of Pharmacy
Arkansas Board of Pharmacy
California Board of Pharmacy
Colorado Board of Pharmacy
Connecticut Board of Pharmacy
Delaware Board of Pharmacy
Department of Health and Human Services
Dist. of Columbia Board of Pharmacy
Florida Board of Pharmacy
Food and Drug Administration
Georgia Board of Pharmacy
Hawaii Board of Pharmacy
Idaho Board of Pharmacy
Illinois Board of Pharmacy
Indiana Board of Pharmacy
Kansas Board of Pharmacy
Kentucky Board of Pharmacy
Louisiana Board of Pharmacy
Maine Board of Pharmacy
Maryland Board of Pharmacy
Michigan Board of Pharmacy
Minnesota Board of Pharmacy
Missouri Board of Pharmacy
Montana Board of Pharmacy
Nebraska Board of Pharmacy
Nevada Board of Pharmacy
New Hampshire Board of Pharmacy
New Jersey Board of Pharmacy
New Mexico Board of Pharmacy
New York Board of Pharmacy
North Carolina Board of Pharmacy
North Carolina Department of Agriculture
North Dakota Board of Pharmacy
Ohio Board of Pharmacy
Oklahoma Board of Pharmacy
Oregon Board of Pharmacy
Pennsylvania Board of Pharmacy
Rhode Island Board of Pharmacy
South Carolina Board of Pharmacy
South Dakota Board of Pharmacy
State Board of Pharmacy of Alabama
State Board of Pharmacy of Alaska
State Board of Pharmacy of Arizona

State Board of Pharmacy of Arkansas
State Board of Pharmacy of California
State Board of Pharmacy of Colorado
State Board of Pharmacy of Connecticut
State Board of Pharmacy of Delaware
State Board of Pharmacy of District of
Columbia
State Board of Pharmacy of Florida
State Board of Pharmacy of Georgia
State Board of Pharmacy of Hawaii
State Board of Pharmacy of Idaho
State Board of Pharmacy of Illinois
State Board of Pharmacy of Iowa
State Board of Pharmacy of Kansas
State Board of Pharmacy of Kentucky
State Board of Pharmacy of Louisiana
State Board of Pharmacy of Maine
State Board of Pharmacy of Maryland
State Board of Pharmacy of Massachusetts
State Board of Pharmacy of Michigan
State Board of Pharmacy of Minnesota
State Board of Pharmacy of Mississippi
State Board of Pharmacy of Missouri
State Board of Pharmacy of Montana
State Board of Pharmacy of Nebraska
State Board of Pharmacy of Nevada
State Board of Pharmacy of New Hampshire
State Board of Pharmacy of New Jersey
State Board of Pharmacy of New Mexico
State Board of Pharmacy of New York
State Board of Pharmacy of North Carolina
State Board of Pharmacy of North Dakota
State Board of Pharmacy of Ohio
State Board of Pharmacy of Oklahoma
State Board of Pharmacy of Oregon
State Board of Pharmacy of Pennsylvania
State Board of Pharmacy of Rhode Island
State Board of Pharmacy of South Carolina
State Board of Pharmacy of South Dakota
State Board of Pharmacy of Tennessee
State Board of Pharmacy of Texas
State Board of Pharmacy of Utah
State Board of Pharmacy of Vermont
State Board of Pharmacy of Virginia
State Board of Pharmacy of Washington
State Board of Pharmacy of West Virginia

State Board of Pharmacy of Wisconsin
State Board of Pharmacy of Wyoming
Texas Board of Pharmacy
Utah Board of Pharmacy
Vermont Board of Pharmacy
Virginia Board of Pharmacy
Washington Board of Pharmacy
Wisconsin Board of Pharmacy
Wyoming Board of Pharmacy

**<u>Vendors</u>**

Advanced Urology Insistute
Agency for Health Care Admin
Alabama Department of Revenue
Alabama Medicaid Agency
American Association of
American Urogynecologic Society
American Urological Association
Arizona Urological Society
Arnall Golden Gregory LLP
Artia Solutions, LLC
Avadel Ireland FI
Avadel Ireland FI
Avadel Legacy
Avadel Legacy
Avadel Operations
Avadel Operations
Avadel Pharmaceuticals Plc FI
Avadel Pharmaceuticals Plc FI
Avail Services, Inc.
Avant Healthcare Marketing Inc
Barthelmes Brand
Brilliant Gifts, LLC
Bryan Cave LLP
BusinessOne Technologies Inc
Carden Jennings
Caroline Burk Inc.
Catalent Pharma Solutions
Catalent Pharma Solutions, LLC
CDW Direct LLC
CFX-Inc.
Chamber Hill Strategies
Charter Communications
Chemtrec
Chesapeake Urology Associates

ClearView Healthcare Partners, LLC
Cleveland Clinic
CNF Pharma, LLC
Commerce Bank
Commissioner of Social Services
Concur
Contemporary Graphics & Bindery, Inc
Contemporary Staffing Solutions
Copyright Clearance Center, Inc
Corporate Creations International
Covance Laboratories Inc.
Crepes a Latte Catering, Inc
Cutting Edge Information, LLC
CVS Pharmacy Inc.
D.C. Treasurer
Deloitte & Touche
Department of Health Care Services
Derse Inc
Digital Science Press, Inc.
DJI Consulting
DLSS
DMAS, Commonwealth of Virginia
DocuSign Inc.
Dohmen Life Science Services LLC
Eagle Pharmacy, LLC
EFP, LLC
Elsevier Inc.
En Pointe Technologies Sales LLC
Enterprise FM
EPL Pathology Archives, LLC.
EVERSANA Life Science Services, LLC
Express Scripts, Inc.
Fathom Healthcare Solutions, Inc.
FedEx Custom Critical
Field Factor Training, LLC.
Fingerpaint Marketing Inc
Fleishman Hillard Inc.
Florida Urology Society
Food and Drug Administration
GEN, LLC
Gen., LLC
Georgia Depart of Community Health
Georgia Obstetrical and
Georgia Urology
GFB Biomedical Consulting LLC
Global Experience Specialist, Inc

Green Griffith Borg-Breen LLP
GS1 US, Inc.
HealthCare Partners
Hyman Phelps & McNamara PC
Illinois Urological Society
Illuminate
Incentive Travel Solutions
Indiana Urologic Association
IQVIA Inc.
IVUmed
Jeff Bagull
Jones Day
Jones Public Affairs Inc.
Joseph S. Richeson
Kenes International Organizers
Kentucky State Treasurer
Large Urology Group Practice
Learning Designs, Inc.
Lehigh Valley Hospital
Lisa Tripodi
Lorne K Havenhill
Louisiana Urological Society
LW Graphic Design
MA Assoc. of Practicing Urologists
MA-AUA Education Fund, Inc.
MCA Financial Group, Ltd
MD DHMH
MD Medical Assistance Recoveries
MedReviews, LLC
Med-Script Associates Ltd.
MG Design Associates Corporation
Minnesota Urological Society, Inc.
Mississippi Board of Pharmacy
Missouri Healthnet Division
National Association for Continence
Nelson Laboratories, LLC
New England Section of the AUA
New Jersey Department of Health
New Jersey Drug Rebate Program
New Roots Solutions LLC
New York Department of Health
New York Section of the AUA
New York State
North Carolina Department of Agricu
North Carolina DHHS
North Carolina Urological

North Central Section of
North Eastern Section of the AUA
NYU Post-Graduate Medical School
NYU School of Medicine
Ohio Department of Medicaid
Ohio Urological Society
Oklahoma State Board of Pharmacy
Oklahoma State Urological Assoc.
One Source Communication
PA Depart. Human Services/Drug reba
Parker Poe Adams & Bernstein
Patient Health Perspectives LLC
Paylocity
Pharmaceutical Care Management Asso
Pharmacoeconomics and
P-L Biomedical
PM Hotel Associates, LP.
Point-of-Care Partners LLC
PPD Development, L.P.
Private Eyes, Inc.
Project Sleep
Proscribe (US) LLC
Quintiles IMS Inc
R&M Management Solutions, LLC.
Ravenswood Studio Inc.
Relay Health Pharmacy
Remund Group LLC
Renaissance Lakewood, LLC
Repco Solutions
Rocky Mountain Urological Society
Royal Car Service Chesterfield taxi
Salesforce.com, Inc.
Serenity Pharmaceuticals, LLC
Society of Urodynamics, Female
Society of Urologic Nurses and Asso
Society of Women in Urology, Inc.
Source Healthcare Analytics
South Carolina Urological
South Central Section of
Southeastern Section of the AUA, Inc
Sr4 Partners
State of Michigan- CSHCS
State of New Jersey DMAHS FX- MCO
State of Rhode Island
Symphonix Solutions Inc
Synergist LLC

Target Health Inc.
Tennessee Board of Pharmacy
The Hibbert Company
The Hibbert Group
The Medical Foundation
ThinkGEN, LLC
Thomas Jefferson University
TrialCard Incorporated
Turnkey Technologies, Inc.
U.S. Treasury / DHA
UCLA State-of-the-Art Urology
UL Information and Insights / Wercs
UroGPO Merger Sub LLC
Urological Association of Physician
Urology Care Foundation, Inc.
Veeva Systems Inc.
VER Technologies LLC
Virginia Urological Society
Walgreens Co.
Washington University
West Virginia Board of Pharmacy
Western Section of the AUA
Wisconsin Urological Society
WJ Weiser & Associates, Inc.
World Press
Wright Express
Xcenda, LLC
Xelay Acumen Management, Inc.
Zero

## SCHEDULE 2

None.