## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVADEL SPECIALTY PHARMACEUTICALS, LLC,[1] | Case No. 19-10248 (CSS) |
| Debtor. | **Waiver of Local Rule Requested** |

**MOTION OF THE DEBTOR FOR ENTRY OF ORDERS (I)(A) APPROVING
BID PROCEDURES RELATING TO THE SALE OF ASSETS OF THE DEBTOR,
(B) ESTABLISHING PROCEDURES IN CONNECTION WITH THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, (C) APPROVING NOTICE PROCEDURES, AND (D) GRANTING RELATED
RELIEF; AND (II) (A) AUTHORIZING THE SALE OF ASSETS OF THE DEBTOR
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS; (B) APPROVING THE FINAL PURCHASE AGREEMENT; (C)
APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES RELATED THERETO;
AND (D) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (collectively, the "**Debtor**"), by

this Motion (the "**Motion**") and pursuant to sections 105(a), 363 and 365 of title 11 of the United

States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006 and

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1

and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seek entry of an order,

substantially in the form annexed hereto as **Exhibit A** (the "**Bid Procedures Order**"):

(a) approving the bid procedures in the form annexed as **Exhibit 1** to the Bid Procedures Order

(as amended or modified, the "**Bid Procedures**") to be implemented in connection with a sale

(the "**Sale**") of all or a portion of the Debtor's assets (the "**Assets**"); (b) establishing procedures

---

[1] The business address and the last four (4) digits of the Debtor's federal tax identification number is Avadel Specialty Pharmaceuticals, LLC, 16640 Chesterfield Grove Road, Suite 200, Chesterfield, MO 63005 (8959).

in connection with the Debtor's assumption and assignment to the Successful Bidder or Backup Bidder (as such terms are defined below) of certain executory contracts and unexpired leases (each an "**Assumed Contract**" and, collectively, the "**Assumed Contracts**") and the allowance of corresponding cure amounts (the "**Cure Amounts**") to be paid in connection with such assumption and assignment; (c) approving the notice procedures (the "**Notice Procedures**") to advise parties in interest and Potential Bidders (as defined below) of the Bid Procedures, the auction of the Assets (the "**Auction**"), the sale hearing for the Assets (the "**Sale Hearing**"), and the Debtor's intent to assume and assign to the Successful Bidder or Backup Bidder the Assumed Contracts and the alleged amount of the corresponding Cure Amounts; and (d) granting related relief.  Additionally, the Debtor seeks entry of an order substantially in the form annexed hereto as **Exhibit B** (the "**Sale Order**"): (a) authorizing the sale of all or certain of the Debtor's assets free and clear of liens, claims, encumbrances and other interests, except as provided in a Purchase Agreement (as defined below); (b) approving the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases related thereto; and (c) granting relief related relief.  In support of this Motion, the Debtor respectfully states as follows:

**Status of the Case**

1.      On February 6, 2019 (the "**Petition Date**"), the Debtor commenced this case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtor has continued in possession of its properties and is operating and managing its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in this Chapter 11 Case.

## Jurisdiction, Venue and Statutory Predicates

4.      The Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).   Venue is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 and Local Rules 2002-1 and 6004-1.

## General Case Background

6.      ASP is a pharmaceutical company engaged in the business of the commercializing, marketing and distributing NOCTIVA™ (desmopressin acetate) nasal spray. NOCTIVA™ was approved in March 2017 by the U.S. Food and Drug Administration for the treatment of nocturia due to nocturnal polyuria in adults and is ASP's sole commercial product. ASP has experienced several market challenges in its efforts to commercialize and increase sales volume while the overall growth for NOCTIVA™ has been slower than anticipated.  As a result, ASP has experienced losses since its inception, and as of the Petition Date, has an accumulated deficit, due in part to costs relating to underachieving sales, unanticipated competition, and certain supply agreements.

7.      In November 2018, ASP commenced a process to find a co-promoter for NOCTIVA™, but the process yielded no material interest.  After a strategic review, ASP decided to exit its business.  Accordingly, ASP commenced this Chapter 11 Case to pursue a sale of its assets and to wind down its business.  ASP is seeking proposals for a sale of all or any

combination of its assets including but not limited to a sale of all or substantially all assets, of the Debtor's new drug application for NOCTIVA™ and its inventory, for only its new drug application for NOCTIVA™, or for only its NOCTIVA™ inventory.  After conducting this sale process, ASP intends to liquidate any remaining assets and wind down any remaining operations.

8.    A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of this Chapter 11 Case, is more fully set forth in the *Declaration of Gregory J. Divis in Support of the Debtor's Chapter 11 Petition and Requests for First Day Relief* (the "**First Day Declaration**") filed contemporaneously herewith and incorporated herein by reference.

9.    Simultaneously with the filing of this Motion, the Debtor has also filed a motion to obtain entry of an interim and final order approving debtor-in-possession financing to be provided by Avadel US Holdings, Inc., as lender and agent (the "**DIP Lender**"), under a debtor-in-possession financing agreement between the Debtor and the DIP Lender.

<u>Sale of Assets</u>

10.    In November 2018, ASP commenced a process to find a co-promoter that might be interested in assisting in the promotion of NOCTIVA™ as a partner to extend the Debtor's promotional reach while attempting to mitigate the cost burden to ASP.  The Debtor contacted twenty pharmaceutical companies and strategic buyers in order to assess their interest level in a strategic transaction with ASP.  However, none of these parties made any proposals to enter into a co-promotion agreement with ASP.

11.    Following its unsuccessful efforts to find a co-promoter, the Debtor began an informal process to identify a sublicensee to assume its obligations, which would also require the consent of Serenity.  That process commenced in December 2018.  The Debtor discretely

contacted potential parties, including pharmaceutical companies and other potential strategic buyers.  As of the Petition Date, five parties expressed an interest in buying some or substantially all of the Debtor's assets.  These five parties signed non-disclosure agreements and conducted initial diligence.  In connection with these discussions, a virtual data room containing extensive information about ASP, including documents describing ASP's business and financial results in considerable detail, was established for those parties who had entered into non-disclosure agreements and requested such information.  One of the five interested parties conducted substantial diligence, but had not completed its diligence or discussed financial or other deal terms for a sale before the Petition Date.

12.    Before conversations progressed, the Debtor determined that, given the difficulties in achieving sales projections and its deteriorating liquidity position, the best available option to maximize value and/or reasonably execute a strategic transaction was through an in-court sale pursuant to section 363 of Bankruptcy Code.  Accordingly, in light of its precarious financial situation and the apparent absence of any strategic alternatives other than an asset sale under the aegis of Chapter 11, the Debtor commenced this Chapter 11 Case to maximize value for the benefit of its estate and creditors.

13.    The Debtor has retained Cassel Salpeter & Co., LLC ("**Cassel Salpeter**") as its investment banker to assist with the process of marketing its Assets for Sale.  Cassel Salpeter is an independent investment banking firm that assists middle-market and emerging growth companies across a broad spectrum of industries.  Cassel Salpeter's professionals are providing or have provided investment banking and other services in connection with the restructuring or sale of the following companies:  1 Global Capital LLC, Sancilio Pharmaceuticals Company, Inc., NephroGenex, Inc. (Nasdaq:NRX), Dynavox, Inc. (OTCPK:DVOX.Q), Gulfstream

International Airlines, Electrolytic Technologies Corporation, Brijot Millimeter Wave Technologies, Corp., HeathStar Communications, Inc., HC Innovations, Inc., Stant Corp., AFP Imaging Corp., Nailite International, Inc., OMI Medical Imaging, , Nitram, Inc., and uniDigital, Inc.. Cassel Salpeter's professionals are also providing or have provided mergers and acquisitions advisory services in connection with whole or partial company sale transactions involving companies across a wide range of industries, including pharmaceuticals.

14.     Working together with the Debtor, Cassel Salpeter immediately following the Petition Date will commence marketing the Assets for Sale.  These efforts will continue and leverage the Debtor's pre-petition process and will further include identifying and contacting additional potential buyers that Cassel Salpeter believes might be interested in acquiring some or all of the Debtor's Assets.

15.     With the assistance of Cassel Salpeter, the Debtor desires to continue with its marketing efforts in this Chapter 11 Case with some or all of the Assets to be sold, subject to the Bid Procedures, to the highest or otherwise best bidder(s) at the conclusion of this sale process. The Debtor envisions a robust sale process that encourages potential purchasers, subject to the Bid Procedures, to bid on and make offers for any specific subset of Assets or all Assets of the Debtor. An auction process, subject to higher and better offers, will stimulate competitive bidding among potential purchasers for the Assets and maximize the value of the Assets – whether sold as a whole or separately – for the benefit of the Debtor's estate and its creditors.

16.     In furtherance of the Debtor's sale objectives, the Debtor proposes the following schedule for completing the marketing and sale process in this Chapter 11 Case and conducting the Auction and Sale in accordance with section 363:

| Event or Deadline | Date and Time |
|---|---|
| Bid Deadline | **March 15, 2019 at 4:00 pm (EDT)**<br>(4 days before proposed Auction date) |
| Deadline to Object to Sale | **March 15, 2019 at 4:00 pm (EDT)**<br>(4 business days before proposed Sale Hearing) |
| Contract Objection Deadline (for all objections other than adequate assurance) | **March 15, 2019 at 4:00 pm (EDT)**<br>(4 business days before Sale Hearing) |
| Selection of Qualified Bidder | **March 18, 2019 at Noon (EDT)**<br>(1 day before proposed Auction date) |
| Auction | **March 19, 2019 at 10:00 am (EDT)**<br>(2 business days before proposed Sale Hearing) |
| Deadline to File Notice Designating Successful Bidder | **March 20, 2019 at Noon (EDT)**<br>(1 business days before Sale Hearing) |
| Deadline to Object to Adequate Assurance of Future Performance and Raise Any Additional Cure Cost Objections | Up to the commencement of the Sale Hearing |
| Sale Hearing (subject to the Court's availability) | **March 21, 2019**<br>(date requested; time to be determined) |

17.     If the Court approves the schedule proposed by the Debtor, the Assets will have been subject to more than 60 days of marketing out of court and approximately an additional 45 days in court.  Given the unique nature of the Assets and the limited pool of potential suitors, the Debtor and Cassel Salpeter believe that this process will fully test the market for the Assets.

## Relief Requested

18.     By this Motion, the Debtor seeks entry of the Bid Procedures Order (a) approving the Bid Procedures; (b) establishing procedures with respect to the assumption and assignment of executory contracts and leases, (c) approving the proposed Notice Procedures; and (d) granting related relief.  Further, the Debtor seeks entry of the Sale Order (a) authorizing the sale of the Assets free and clear of all liens, claims, encumbrances and other interests; (b) approving the Final Purchase Agreement; (c) approving the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases; and (d) granting relief related relief.

### A.      The Bid Procedures

19.     The Debtor's proposed Bid Procedures, which are attached hereto, are intended to establish a sale process that will maximize the value of the Assets for the benefit of the Debtor's estate and its creditors.  The Debtor will solicit bids for the Assets in accordance with such Bid Procedures and, if bids are received in conformance with the Bid Procedures, the Debtor will conduct the Auction to determine the highest or otherwise best bid(s) for the Assets. Specifically, the Bid Procedures provide, in relevant part, as follows:[2]

  a.    Qualified Bidders, Non-Disclosure Agreements and Access to Data Room

   Any person or entity wishing to bid on the Assets (each a "**Potential Bidder**") must execute and deliver (unless previously delivered) to the Debtor a confidentiality and non-disclosure agreement (a "**Non-Disclosure Agreement**") in form and substance acceptable to the Debtor.

   The Debtor, in its discretion, will afford a Potential Bidder who executes and delivers a Non-Disclosure Agreement due diligence access or such additional information as may be reasonably requested by the Potential Bidder that the Debtor, in its business judgment, determines to be reasonable and appropriate,

---

[2]    This description of the Bid Procedures includes excerpts from the terms set forth in the Bid Procedures annexed hereto.  Capitalized terms used but not otherwise defined in this section have the meanings ascribed to them in the Bid Procedures.  To the extent that this description differs in any way from the terms set forth in the Bid Procedures, the terms of the Bid Procedures shall control.

including, without limitation, access to the Debtor's confidential electronic data room, reasonable access, during normal business hours, to the Debtor's management, and access to all relevant information regarding the Assets reasonably necessary to enable a Potential Bidder to evaluate the proposed Sale; provided that any such Potential Bidder has evidenced the financial wherewithal and ability to consummate the Sale.  The Debtor and Cassel Salpeter will coordinate all due diligence access and requests for additional information from such Potential Bidders.  The Debtor shall not be obligated to furnish any due diligence information after the conclusion of the Auction other than to the Successful Bidder (defined below) or any Backup Bidder.  Neither the Debtor, its counsel nor its advisors are responsible for, or will bear liability with respect to, any information obtained by Potential Bidders in connection with due diligence.  Notwithstanding anything contained herein to the contrary, to the extent the Debtor believes that providing access to Potential Bidders to certain sensitive commercial information is not advisable, the Debtor, in its business judgment, will decide what, if any, diligence information to make available to a particular Potential Bidder, and neither the Debtor nor its representatives will be obligated to furnish any information of any kind whatsoever to any party.

A "**Qualified Bidder**" is any Potential Bidder that (a) delivers to the Debtor a Non-Disclosure Agreement, (b) demonstrates to the Debtor a reasonable certainty of the ability to close the Sale in a timely manner (including the financial capability to close the Sale and the ability to obtain any the necessary governmental, licensing, regulatory, or other approvals necessary for such Sale, if any), and (c) submits a Written Offer (as defined below) that is deemed a Qualified Bid as set forth below, *provided*, *however*, that the Debtor may waive one or more requirements for a Qualified Bidder and retains sole discretion in determining whether a Potential Bidder submits a Qualified Bid and becomes a Qualified Bidder.  As promptly as practicable after a Potential Bidder delivers a Non-Disclosure Agreement and submits a Written Offer, and in any event not later than 12:00 p.m. (EDT) one (1) day preceding the Auction, the Debtor shall determine, and the Debtor shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder.  Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtor or its advisors regarding the ability of such Potential Bidder, as applicable, to consummate the proposed Sale.

b.  Requirements for a Qualified Bid

In order to become a Qualified Bidder and participate in the Auction, if any, a Potential Bidder must deliver to the Debtor, with a copy to counsel to the Debtor and Cassel Salpeter, a written offer (each, a "**Written Offer**"), which is deemed to be a Qualified Bid.  To be deemed a "**Qualified Bid**", a Written Offer must meet each of the requirements listed below:

(i)  Delivery:  Be delivered no later than 4:00 p.m. (EDT) on March 15, 2019 (the "**Bid Deadline**").

(ii)    <u>Executed Agreement</u>:  Be accompanied by an executed and binding asset purchase agreement (together with the exhibits and schedules thereto, a "**Purchase Agreement**").

(iii)    <u>Designation of Assumed Contracts and Leases and Adequate Assurance of Future Performance</u>:  Contain a list of any and all Assumed Contracts that are to be assumed and assigned in connection with a Sale to the extent such list is not included in the Purchase Agreement.  The Potential Bidder must also include documentation sufficient to provide adequate assurance of future performance for the benefit of the non-Debtor parties to the Assumed Contracts on the list, including, without limitation, (i) the specific name of the entity to whom the Lease will be assigned; (ii) if available, audited financial statements and annual reports of Buyer and any other assignee for the past three (3) years, including all supplements or amendments thereto; (iii) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the Lease(s) subject to the assignment request, and any financial projections, calculations and/or pro formas prepared in contemplation of purchasing the assets, including the leases; (iv) all documents and other evidence of the proposed assignee's experience in the Debtor's industry; and (v) a contact person for the proposed assignee whom non-Debtor parties may contact directly in connection with adequate assurance of future performance.  Should the Potential Bidder be a newly formed entity (a "**Newco**"), written evidence of adequate assurance of future performance should also include when such Newco was formed, how it will be financed together with evidence of firm financial commitments, and identify what credit enhancements will be available to guarantee the obligations under the Leases.  Non-Debtor parties to the Assumed Contracts will have until the commencement of the Sale Hearing to object on adequate assurance grounds.  The Debtor's ability to assume and assign certain executory contracts of the Debtor may be subject to third party consent.

(iv)    <u>Proof of Financial Ability to Perform</u>:  Contain evidence of financing, access to funds or such other

financial and other information that will reasonably allow the Debtor to such make a determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Purchase Agreement, which evidence is satisfactory to the Debtor, including, without limitation, such financial and other information setting forth adequate assurance under section 365 of the Bankruptcy Code in a form requested by the Debtor.

(v)     Identification of Parties to Participate:  To the Debtor's satisfaction, (i) fully disclose the identity of each entity or person that will be bidding for the Assets or otherwise participating in connection with such bid, (ii) the terms of any such participation, and if an entity has been formed for the purpose of acquiring some, or all, of the Assets, the parties that will bear liability for any breach by such entity, and (iii) the ability of such parties to obtain government, licensing or regulatory approval in connection with the consummation of any Sale.

(vi)    Binding and Irrevocable:  State that the Written Offer is binding and irrevocable until (i) the closing of the Sale, if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Successful Bidder (as defined below), or (ii) if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Backup Bidder (as defined below), until the earlier of (x) two (2) business days after the closing of the transaction(s) by which all of the Assets that were subject to such Backup Bid (as defined below) have been transferred to one or more Qualified Bidders pursuant to these Bid Procedures and (y) thirty (30) days after the date of the Auction (the "**Backup Bid Expiration Date**").

(vii)   No Break-Up Fee or Expense Reimbursement:  Not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment.

(viii)  Contingencies:  Not contain any due diligence or financing contingencies.

     (ix)    <u>Authorization to Consummate Sale</u>:  Provide evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body), if any, with respect to the submission, execution, delivery and closing of the Purchase Agreement to the Debtor's satisfaction.

     (x)    <u>Purchase Price</u>:  Provide that any cash portion of the purchase price shall be payable in U.S. dollars and will be paid in cash, cash equivalents, or such other consideration acceptable to the Debtor.

     (xi)    <u>Good Faith Deposit</u>:  Provide a good faith deposit (the "**Good Faith Deposit**") submitted via federal wire transfer in immediately available funds in accordance with the wire instructions to be provided by the Debtor, or such other form as is acceptable to the Debtor, in an amount equal to 10% of the cash purchase price set forth in the Written Offer or such amount as may be determined by the Debtor in its sole discretion.

     (xii)    <u>Anticipated Timeline</u>:  Set forth the anticipated timeframe for (i) obtaining any required government, regulatory or other approvals, and (ii) consummating the Sale within the requirements of subparagraph (xiv) below.

     (xiii)    <u>Agreement with Bid Procedures, Provision of Additional Information and Submission to Bankruptcy Court Jurisdiction</u>:  Include a written acknowledgement by such Potential Bidder that it (i) agrees to the terms of the Bid Procedures; (ii) agrees to provide such other information as may be reasonably requested in writing by the Debtor prior to the Auction; and (iii) confirms that the Potential Bidder submits to the jurisdiction of the Bankruptcy Court.

     (xiv)    <u>Closing Date</u>:  Provide for a closing date (the "**Closing Date**") on or before March 31, 2019.

Between the Bid Deadline and the Auction, the Debtor may (i) negotiate or seek clarification of any Written Offer from a Qualified Bidder, (ii) request information from the Qualified Bidder, (iii) engage in discussions with the Qualified Bidder, or (iv) take such other actions contemplated under these Bid Procedures.  Without the consent of the Debtor, a Qualified Bidder may not

amend, modify or withdraw its Written Offer.  The form of Purchase Agreement will be evaluated by the Debtor and must be acceptable to the Debtor, in its business judgment and sole discretion.  Any Good Faith Deposit accompanying a Written Offer that the Debtor determines not to be a Qualified Bid shall be returned promptly following such determination.

c.  Bid Deadline

All Written Offers must be received by each of the following parties prior to the Bid Deadline: (i) the Debtor, Avadel Specialty Pharmaceuticals, LLC, 16640 Chesterfield Grove Road, Suite 200, Chesterfield, MO 63005, Attn: Phillandas T. Thompson; (ii) Debtor's counsel, Greenberg Traurig, LLP, 333 S.E. 2nd Avenue, Suite 4400, Miami, FL 33131, Attn: Paul J. Keenan Jr., e-mail: keenanp@gtlaw.com and John R. Dodd, e-mail: doddj@gtlaw.com; and (iii) Debtor's investment banker, 801 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: James S. Cassel, e-mail: jcassel@cs-ib.com.

The Debtor will promptly (but, in any case, within one (1) business day) deliver, after receipt thereof, copies of all Written Offers to counsel for the DIP Lender (collectively, the "**DIP Lender**").

d.  Determination of Qualified Bidders

The Debtor, after consultation with the DIP Lender, shall, by no later than 12:00 p.m. (EDT) one (1) day prior to the Auction, (i) determine, in its business judgment and sole discretion, whether a Potential Bidder is a Qualified Bidder, and (ii) notify each such Potential Bidder that its Written Offer is a Qualified Bid and that such Potential Bidder is a Qualified Bidder.

e.  No Breakup Fee or Bid Protections

No Purchase Agreement may include any breakup fee or expense reimbursement or other similar bid protections; *provided, however,* that if the Debtor enters into a purchase agreement for the potential buyer to act as a stalking horse bidder, such agreement may contain customary breakup fees and bid protections to be approved by the Bankruptcy Court.

f.  "As Is, Where Is"

Except as otherwise provided in the Final Purchase Agreement (as defined below), the Sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor or its estate except to the extent set forth in the Final Purchase Agreement as approved by the Bankruptcy Court.  Except as otherwise provided in the Final Purchase Agreement, all of the Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of all liens, claims, interests and

encumbrances (collectively, the "**Interests**") in accordance with sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the Sale of the Assets.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all desired due diligence regarding the Assets prior to making its Qualified Bid, that it has relied solely upon its own independent review, investigation and inspection of any documents and/or the Assets in making its Qualified Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid Procedures or, as to the Successful Bidder(s) and the Backup Bidder(s), the terms of the Sale(s) as set forth in the final form of the applicable Purchase Agreement(s) (the "**Final Purchase Agreement**"), which shall be on terms mutually acceptable to the Successful Bidder and Backup Bidder, on the one hand, and the Debtor, on the other hand.

g.  <u>Auction</u>

If the Debtor determines that there are two or more Qualified Bidders, the Debtor shall conduct an Auction to determine the highest and otherwise best Qualified Bid.  This determination shall take into account any factors the Debtor, in its business judgment and sole discretion reasonably deems relevant and may include, among other things, the following: (i) the amount and nature of the consideration; (ii) the other terms requested by each Qualified Bidder in its respective Purchase Agreement; (iii) the extent to which such terms are likely to delay closing of the Sale of the Assets and the cost to the Debtor of such modifications or delay; (iv) the total consideration to be received by the Debtor; (v) whether the Qualified Bidder has secured any consents that may be necessary from certain third parties, and (vi) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof.

The Auction shall commence at 10:00 a.m. (EDT) on March 21, 2019, at the offices of Greenberg Traurig, LLP, MetLife Building, 200 Park Avenue, New York, NY 10166, or such other place as determined by the Debtor, and continue thereafter until completed.  The Debtor reserves the right to cancel or postpone the Auction.  The Debtor reserves the right to not proceed with any Sale or to proceed with a Sale of any certain of the Assets.

Except as otherwise permitted in the Debtor's discretion, only the Debtor, the DIP Lender, a Qualified Bidder, and any creditor that submits a written request to attend to the Debtor in advance of the Auction, and, in each case, their respective professionals shall be entitled to attend the Auction.  Only a Qualified Bidder is eligible to participate in the Auction.

The Auction shall be governed by the following procedures:

(i)     Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(ii)    The Debtor may waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any order of the Bankruptcy Court entered in connection with this Chapter 11 Case, (ii) disclosed to each Qualified Bidder, and (iii) designed, in the Debtor's business judgment, to result in the highest and otherwise best offer for the Assets.

(iii)   The Debtor will arrange for the actual bidding at the Auction to be transcribed.  Each Qualified Bidder shall designate a single individual to be its spokesperson during the Auction.

(iv)    Each Qualified Bidder participating in the Auction must confirm on the record, at the commencement of the Auction and again at the conclusion of the Auction that it has not engaged in any collusion with the Debtor or any other Qualified Bidder regarding these Bid Procedures, the Auction or any proposed transaction relating to the Assets.

(v)     Prior to the Auction, the Debtor shall identify the highest and best of the Qualified Bids received.  Subsequent bidding will continue in minimum increments valued at not less than $50,000 in cash or in such amounts as to be determined by the Debtor prior to, and announced at, the Auction.

(vi)    In the Debtor's discretion, all Qualified Bidders shall have the ability to bid on substantially all of the Assets or only certain Assets of the Debtor.

(vii)   Other than the assumption of liabilities of the Debtor or permitted non-cash consideration as may be acceptable to the Debtor in its business judgment and sole discretion, all bids must be in cash.

(viii)  All Qualified Bidders shall have the right to, at any time, request that the Debtor announce, subject to any potential new bids, the then-current highest and best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtor's announcement of the then-current highest and best bid.

(ix)    In the Debtor's discretion, all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Purchase Agreement, as applicable, at the Auction in accordance with the terms and provisions of these Bid Procedures; *provided*, *however*, that any such

modifications to the Purchase Agreement, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtor as determined by the Debtor, in its business judgment and sole discretion.

(x)     Upon conclusion of the bidding, the Auction shall be closed, and the Debtor shall, as soon as practicable, after consultation with the DIP Lender,  (i) identify and determine in its business judgment the highest and best Qualified Bid (or Qualified Bids) for the Assets (a "**Successful Bid**" and the entity or entities submitting such Successful Bid, the "**Successful Bidder**"), (ii) advise the Qualified Bidders of such determination, (iii) require the Successful Bidder (or Successful Bidders) to deliver an executed Final Purchase Agreement, which reflects its bid and any other modifications submitted and agreed to during the Auction, prior to commencement of the Sale Hearing, and (iv) immediately file with the Court a designation of Successful Bidder.

(xi)    In addition, the Debtor will determine, after consultation with the DIP Lender, which Qualified Bid, if any, is the next highest and best Qualified Bid to the Successful Bid, and will designate such Qualified Bid as a "**Backup Bid**" in the event the Successful Bidder fails to consummate the contemplated Sale.  A Qualified Bidder who submitted a Qualified Bid and is designated a Backup Bid is a "**Backup Bidder**".  Each Backup Bid shall remain open and binding until the Backup Bid Expiration Date.

h.  <u>Sole Qualified Bidder</u>

If, by the Bid Deadline, the Debtor has selected only one Qualified Bidder for any or all of the Assets then the Debtor shall not hold an Auction and instead, shall determine whether to request at the Sale Hearing that the Bankruptcy Court approve the Qualified Bid from the sole Qualified Bidder.  Notwithstanding anything herein to the contrary, nothing herein shall obligate the Debtor to consummate or pursue the Sale of the Assets.

i.  <u>Sale Hearing</u>

Subject to the Court's availability, the Sale Hearing will be held on March 21, 2019, at such time designated by the Court at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, DE 19801.  At the Sale Hearing, the Debtor shall present the results of the Auction, if one is held, to the Bankruptcy Court and may seek approval of the Successful Bid and any Backup Bid.

Following the Sale Hearing and entry of a Sale Order approving the Sale of the Assets to a Successful Bidder, if such Successful Bidder fails to consummate the Sale for any reason, the Backup Bidder shall be designated the Successful Bidder and the Debtor shall be authorized to close such Sale with the Backup Bidder

without further order of the Bankruptcy Court.  The Successful Bidder and Backup Bidder (if any) should be represented by counsel at the Sale Hearing.

j.  Return of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders shall be held in a non-interest bearing escrow account.  Except for those of the Successful Bidder and Backup Bidder(s), the Debtor shall promptly return the Good Faith Deposits of (i) all Qualified Bidders after the Auction; and (ii) the Backup Bidder after the Backup Bid Expiration Date.

**B.    Assumption and Assignment/Cure Procedures**

20.    To facilitate and effectuate the Sale, the Debtor may be required to assume and assign certain contracts and leases (the "**Assumed Contracts**") to the Successful Bidder or Backup Bidder, as applicable.  Given the number of executory contracts to which the Debtor are a party, the Debtor seeks to establish (a) procedures for determining Cure Amounts through the closing date of the Sale, which amounts shall include all pre- and post-petition amounts the Debtor owes the non-debtor party under each Assumed Contract that have accrued and not been paid prior to the closing date, and (b) a deadline for any other objections to the assumption and assignment of the Assumed Contracts, including, without limitation, adequate assurance of future performance (collectively, the "**Cure Procedures**").

21.    No later than three (3) business days after entry of the Bid Procedures Order, the Debtor shall prepare and distribute to non-Debtor parties to the Assumed Contracts a notice, substantially in the form annexed hereto as **Exhibit 3** (the "**Notice of Assignment and Assumption**"), listing (i) the Assumed Contract(s); and (ii) the Cure Amount(s), if any.

22.    To facilitate a prompt resolution of cure disputes and objections relating to the assumption and assignment of the Assumed Contracts, the Debtor proposes the following deadlines and procedures:

a.  The non-Debtor parties to the Assumed Contracts shall have until **4:00 p.m. (EDT) on March 15, 2019** (the "**Contract Objection Deadline**"), which deadline may be extended in the discretion of the Debtor, to object (a "**Contract Objection**") to (i) the Cure Amounts listed by the Debtor and to propose alternative Cure Amounts, and/or (ii) the proposed assumption and assignment of the Assumed Contracts in connection with the Sale.  The Debtor may amend the Notice of Assignment and Assumption (each a "**Supplemental Notice of Assignment and Assumption**") to add or remove a contract or lease or to reduce the Cure Amount thereof.

b.  The non-Debtor parties to the Assumed Contracts shall have until the commencement of the Sale Hearing to raise any objections to the adequate assurance of future performance by the Successful Bidder (the "**Adequate Assurance Objection**").

c.  Any party objecting to (i) any Cure Amount and/or (ii) the proposed assumption and assignment of any Assumed Contract in connection with the Sale, shall file and serve a Contract Objection, in writing, setting forth with specificity, any and all cure obligations that the objecting party asserts must be cured or satisfied in respect of the Assumed Contract(s), as applicable, and/or any and all objections to the potential assumption and assignment of such agreements, together with all documentation supporting such claim or objection, upon counsel to the Debtor, so that the Contract Objection is received no later than **4:00 p.m. (EDT), on the Contract Objection Deadline; provided that any Adequate Assurance Objection may be made at the Sale Hearing**.  Where a non-Debtor counterparty to an Assumed Contract files an objection asserting a cure amount higher than the proposed Cure Amount (the "**Disputed Cure Amount**"), then (a) to the extent the parties are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, and subject to the written consent of the Successful Bidder or Backup Bidder, as applicable, of such consensual resolution, the Cure Amount shall be revised to be the amount of the consensual resolution; (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be heard at the Sale Hearing or such other date as agreed to by the parties; or (c) the Successful Bidder or Backup Bidder, as applicable, may remove the contract to which the Contract Objection relates from the schedule of Assumed Contracts.

d.  Unless a Contract Objection is filed and served before the Contract Objection Deadline or, with respect to any Adequate Assurance Objection, raised at the Sale Hearing, all counterparties to the Assumed Contracts shall be (i) forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed Contracts, or any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the closing of the Sale, including those constituting Excluded Liabilities, against the Purchaser, any counterclaim, defense, setoff, recoupment, claim of refund or any other claim asserted or against

the Debtor, and the Debtor and the Successful Bidder or Backup Bidder, as applicable, shall be entitled to rely solely upon the proposed Cure Amounts set forth in the applicable Notice of Assignment and Assumption; (ii) deemed to have consented to the assumption and assignment; and (iii) forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder or Backup Bidder, as applicable, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Contracts, including, without limitation, any consent rights, or that there is any objection or defense to the assumption and assignment of such Assumed Contracts or imposing or charging against the Successful Bidder or Backup Bidder, as applicable, any rent accelerations, assignment fees, increases or any other fees as a result of the Debtor's assumption and assignment to the Successful Bidder or Backup Bidder, as applicable, of any Assumed Contract in accordance with the Final Purchase Agreement.

e.  To the extent a non-Debtor party believes that an Assumed Contract requires such party's consent right to the assignment of such Assumed Contract to the Successful Bidder or Backup Bidder, as applicable, such non-Debtor party must raise this issue in its objection which must be filed before the Contract Objection Deadline.  If no timely objection is raised, such other non-Debtor parties to an Assumed Contract shall be barred and estopped from asserting or claiming that their Assumed Contract contains an enforceable consent right.

**C.     Notice Procedures**

23.     The Debtor requests that the Court approve the following Notice Procedures in connection with providing all parties in interest and Potential Bidders with notice of the Bid Procedures, the Auction Date, the Sale Hearing, and the Debtor's intent to assume and assign to the Successful Bidder or Backup Bidder the Assumed Contracts and the corresponding Cure Amounts as follows:

a.  On or before three (3) business days after entry of the Bid Procedures Order, or as soon thereafter as such parties can be identified, the Debtor will cause (a) a notice in substantially the form annexed as **Exhibit 2** to the Bid Procedures Order (the "**Notice of Bid Procedures, Auction Date and Sale Hearing**"); and (b) a copy of the Bid Procedures Order to be sent by first-class mail postage prepaid, to the following:  (i) the Office of the United States Trustee; (ii) counsel to the DIP Lender; (iii) all taxing authorities in the states where the Debtor is located, as well as the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtor to assert jurisdiction over the Debtor or which are reasonably expected by the Debtor to have claims, contingent or otherwise, in connection with the ownership of the Assets, or to have any known

interest in the relief requested by the Motion; (iv) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (v) all persons known or reasonably believed by the Debtor to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Assets; (vi) the non-Debtor parties to the Assumed Contracts; (vii) all persons known or reasonably believed to have expressed an interest in acquiring the Assets within the last four (4) months; (viii) the United States Attorney's office for the District of Delaware; (ix) Attorneys General in the states where the Debtor is located; (x) any applicable state and local environmental agencies; and (xi) all parties to any pending litigation involving the Debtor.

b.   On or before three (3) business days after entry of the Bid Procedures Order, the Debtor will serve the Notice of Bid Procedures, Auction Date and Sale Hearing on all known creditors of the Debtor.

c.   On or before seven (7) days after entry of the Bid Procedures Order, subject to applicable submission deadlines, the Debtor will publish an abbreviated version of the Notice of Bid Procedures, Auction Date and Sale Hearing once in one or more regional and/or national publications that the Debtor deems appropriate.

d.   On or before three (3) business days after the entry of the Bid Procedures Order, the Debtor shall serve by first class mail or hand delivery, the Notice of Assumption and Assignment, substantially in the form attached to the Bid Procedures Order as **Exhibit 3**, on all non-Debtor parties to the Assumed Contracts.  The Notice of Assumption and Assignment (or a Supplemental Notice of Assumption and Assignment) shall (i) identify the calculation of the Cure Amounts that the Debtor believe must be paid to cure all prepetition defaults under the Assumed Contracts, and (ii) provide instructions for the timing and procedure governing the filing of any objections to (a) the proposed Cure Amounts and (b) the proposed assumption and assignment of any Assumed Contract in connection with the Sale, as approved by the Bankruptcy Court in the Bid Procedures Order.  In addition, if the Debtor identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to the Successful Bidder or Backup Bidder, as applicable, that are not included in the original Notice of Assumption and Assignment, the Debtor shall promptly send a Supplemental Notice of Assumption and Assignment to the applicable counterparties to such additional Assumed Contracts.

24.   In addition to the foregoing, electronic notification of the Motion, the Bid Procedures Order, the Notice of Bid Procedures, Auction Date and Sale Hearing, and the Notice of Assumption and Assignment will be posted on: (i) the main case docket on the Bankruptcy Court's electronic case filing (ECF) website; and (ii) the case management website maintained by the Debtor's claims and noticing agent, Epiq Corporate Restructuring, LLC.

**D.      The Proposed Sale**

25.      The Debtor also seeks authority to sell substantially all of the Assets, or any portion thereof, to a purchaser pursuant to the terms of an asset purchase agreement to be entered into between the parties.

26.      Given that the Debtor does not have a stalking horse and seeks to reserve the ability to toggle between an all Asset Sale and a Sale for only certain Assets, whichever is determined to be most favorable to the Debtor, its estate and its stakeholders, the Debtor posits that attaching a form asset purchase agreement at this time is premature.  Accordingly, the Debtor seeks a waiver of Local Rule 6004-1(b)(i) and the requirement to attach a form of purchase agreement to this Motion.  The Debtors will file the Final Purchase Agreement with Court promptly upon it becoming available.

27.      Even so, while no form Purchase Agreement is attached to the Motion and none has been negotiated with prospective Bidders, in accordance with Local Rule 6004-1(b)(iv) the following chart describes certain material terms that the Debtor anticipates may be included (or not) in a form Purchase Agreement and Sale Order:

| Material Term/Issue | Response |
| --- | --- |
| Sale to Insider: | As of the date of filing this Motion, the proposed purchaser has not been identified. Even so, the Debtor does not anticipate that the purchaser will be an insider of the Debtor. |
| Agreements with Management: | As of the date of filing this Motion, potential buyers have not disclosed their intentions as to the management team. |

| | |
|---|---|
| Releases: | The Sale Order does not contain any release provisions. |
| Private Sale/No Competitive Bidding: | An auction process is contemplated, and competitive bidding is encouraged. |
| Closing and Other Deadlines: | A closing must occur on or before March 31, 2019. |
| Good Faith Deposit: | 10% of the cash purchase price set forth in the Written Offer or such amount as may be determined by the Debtor in its sole discretion. |
| Interim Arrangements with Proposed Purchaser: | As of the date of filing this Motion, the Debtor does not know whether any potential purchaser will request an interim management agreement or other arrangement with the Debtor. |
| Use of Proceeds: | The cash proceeds of the Sale, if any, will be held by the Debtor, with any liens, claims, interests and encumbrances to attach to such proceeds to same extent, validity and priority as existed prior to the Petition Date.  Any such proceeds received by the Debtor will be paid to any creditors in accordance with the priorities of their allowed claims upon further authorization from this Court. |
| Tax Exemption: | The Debtor is seeking to have the sale declared exempt from bulk sales or similar laws, but only to the greatest extent permitted by applicable law. |
| Record Retention: | The Debtor expects that any buyer of substantially all of the Assets will acquire |

|  | all of the Debtor's books and records. To the extent sold, the Debtor (and any successor) will retain reasonable access to its records, to the extent necessary. |
|---|---|
| Sale of Avoidance Actions: | There is no sale of avoidance actions contemplated. |
| Requested Findings as to Successor Liability: | The Sale Order will contain findings of fact and conclusions of law limiting the proposed purchaser's successor liability. |
| Sale Free and Clear of Unexpired Leases: | The Debtor is seeking to sell the Assets free and clear of all liens, claims, interests and encumbrances to the fullest extent permitted by section 363 of the Bankruptcy Code, including any licenses relating to the Assets, but not possessory leasehold interests. |
| Credit Bidding: | Nothing in the proposed Bid Procedures abridges, enlarges or modifies any credit bid right under section 363(k) of the Bankruptcy Code. |
| Relief from Bankruptcy Rule 6004(h) | The Debtor seeks relief from the stay imposed by Bankruptcy Rule 6004(h). |

**Basis for Relief Requested**

**A.    The Sale and the Bid Procedures Should Be
Approved Based on the Sound Business Purpose Test.**

28.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court

to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtor.  *See In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010), *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. 2002).

29.    In determining the propriety of the sale of assets by a chapter 11 debtor prior to confirmation of a plan of reorganization, the Second and Sixth Circuits, as well as other courts, have applied, among other factors required by section 363 of the Bankruptcy Code, a "sound business purpose" test.  *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1070-71; *see also Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).  In *In re Solar Mfg. Corp.*, the Third Circuit, pursuant to section 116(3) of the Bankruptcy Act of 1938 (the predecessor to section 363 of the Bankruptcy Code), applied the stricter standards of "emergency" or "perishability" on a proposed pre-confirmation sale of a chapter 11 debtor's assets.  176 F.2d 493, 494-95 (3d Cir. 1949).  Although the Third Circuit has not specifically addressed the application of the "sound business purpose" test, in *In re Abbots Dairies of Pa., Inc.*, 788 F.2d 143, 143 (3d Cir. 1986), where the Third Circuit examined a pre-confirmation sale of assets of chapter 11 debtors, the Court did not mention the *Solar* decision, leading "other courts to [ ] conclu[de] that the Third Circuit follows the 'sound business purpose' test rather than the 'emergency' rule".  *See In re Titusville Country Club*, 128 B.R. at 399.

30.    The "sound business purpose" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely,

(a) that a sound business reason justifies the sale of assets outside the ordinary course of business, (b) that accurate and reasonable notice has been provided to interested persons, (c) that the debtor had obtained a fair and reasonable price, and (d) good faith exists with respect to the purchaser of the assets. *Id.*; *In re Sovereign Estates, Ltd*., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984); *see also In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *In re Lionel*, 722 F.2d at 1071; *In re Montgomery Ward Holding Corp.*, 242 B.R. at 155. The Debtor submits that the decision to proceed with the approval of the Bid Procedures related to a potential sale is based upon its sound business judgment and should be approved.

31. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section

105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R 531, 537 (Bankr. W.D. Tenn. 1986) (noting that "the Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

32.   The Debtor submits that sound business justification exists to sell the Assets, or any portion thereof, to the Successful Bidder pursuant to the Bid Procedures.  The Debtor and the DIP Lender reached agreement on a post-petition financing arrangement, which financing, if approved, sets forth milestones including for the consummation of a Sale.  The Debtor must close a sale transaction within the time provided in these milestones.  In light of the Assets involved and both the pre-petition and anticipated post-petition marketing efforts, the Sale process proposed by the Debtor will maximize the value of the Assets for the benefit of the Debtor's stakeholders.

33.   The Debtor also believes that the proposed Bid Procedures are reasonably designed to enable the Debtor to generate the highest value for the Assets.  The proposed Bid Procedures present a controlled, fair and open process that the Debtor believes will encourage bidding only from seriously interested parties who possess the financial and operational capacity to purchase the Assets.  As such, the Bid Procedures promote the primary goal of maximizing the value received by the estate.  Courts generally approve procedures that are intended to encourage competitive bidding and are consistent with the goal of maximizing the value received by the estate.  *See In re John Joseph Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) (bidding

procedures should facilitate an "open and fair" sale and be "designed to maximize value for the estate").

34.    The Debtor submits that the implementation of the Bid Procedures, if approved, will satisfy the prongs of the "sound business purpose" test.  For purposes of prong one, the Debtor seek to sell the Assets in order to garner value for the benefit of its estate.  The second prong of the "sound business purpose" test will be satisfied because the proposed Notice Procedures are designed to provide adequate notice to all potentially interested parties, including those who previously expressed an interest in purchasing the Assets.  With respect to the third prong, the Debtor intends to continue to market the Assets, to solicit interested bidders and to conduct the Auction in a manner aimed at yielding the highest and best price for the Assets.  Finally, the Bid Procedures incorporate a good faith requirement of all Qualified Bidders applicable at both the commencement and conclusion of the Auction.

35.    Moreover, the Bid Procedures are designed to maximize the value received for the Assets.  The Debtor seeks to determine the market value for the Assets.  The process proposed by the Debtor allows for a fair auction process, providing bidders with sufficient time and information to submit a timely bid.  If the Debtor receives sufficient interest in a sale of the Assets, the Bid Procedures are designed to ensure that the Assets will be sold for the highest or otherwise best possible purchase price under the circumstances.  Accordingly, the Debtor and all parties in interest can be assured that the consideration received for the Assets will be fair and reasonable, and the third prong of the "sound business purpose" test satisfied.

36.    For all of these reasons, the proposed Bid Procedures are reasonable, appropriate and within the Debtor's sound business judgment.  They provide the Debtor with the best method

for obtaining the maximum realizable value for the Assets.  Thus, the Bid Procedures should be approved.

**B.    The Cure Procedures in Connection with the Potential Assumption and Assignment of Assumed Contracts are Reasonable and Appropriate.**

37.    The Debtor believes that the proposed Cure Procedures in connection with the potential assumption and assignment of an Assumed Contract are appropriate and reasonably calculated to provide all non-Debtor parties to the Assumed Contracts with timely and proper notice of the Debtor's intent to assume and assign the Assumed Contracts.  The Cure Procedures provide the non-Debtor counterparties with an opportunity to challenge the assumption and assignment of such Assumed Contracts either as to the proposed Cure Amount or as to the assumption and assignment, in general.  Therefore, the Debtor respectfully requests the Court approve the proposed Cure Procedures.

**C.    The Notice Procedures are Reasonable and Appropriate.**

38.    The Debtor believes that the proposed Notice Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Bid Procedures to be employed in connection therewith and the Sale Hearing.

39.    The Debtor further believes that the Notice of Assumption and Assignment is reasonably calculated to provide all counterparties to the Assumed Contracts with proper notice of the potential assumption and assignment of the applicable Assumed Contract and any Cure Amount relating thereto.

40.    The Debtor submits that the proposed Notice Procedures comply with Bankruptcy Rule 2002 and Local Rule 2002-1.  Therefore, the Debtor believes that the Notice Procedures are reasonable, appropriate and should be approved.

### D.    The Sale of the Assets Free and Clear of Liens and Other Interests Is Authorized by Section 363(f) of the Bankruptcy Code.

41.    The Debtor further submits that it is appropriate to sell the Assets free and clear of liens pursuant to section 363(f) of the Bankruptcy Code, with any such liens attaching to the cash proceeds of the Assets to the extent applicable.    Section 363(f) of the Bankruptcy Code authorizes a trustee to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interests;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

42.    Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests.  *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

43.     One or more of the subsections of section 363(f) will be satisfied with respect to the transfer of the Assets in accordance with the Sale.  In particular, the Debtor believes that, among others, section 363(f)(2) will be met in connection with the transactions proposed hereunder because each of the parties holding liens on the Assets will consent or, absent any objection to this motion, will be deemed to have consented to the Sale.  Any lienholder also will be adequately protected by having their liens, if any, in each instance against the Debtor or its estate, attach to the sale proceeds ultimately attributable to the Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtor may possess with respect thereto.  To the extent that any parties-in-interest holding liens against the Assets do not consent to the Sale, the Debtor will seek approval of the Sale of the Assets free and clear of any liens, claims, interests and encumbrances in accordance with any other applicable provisions of section 363(f) of the Bankruptcy Code, including sections 363(f)(3) and 363(f)(5).

44.     Based upon the evidence presented and argument to be made at the Sale Hearing, the Debtor will seek entry of an order authorizing the sale of the Assets free and clear of any liens, claims, interests and encumbrances.

     **E.**     **Assumption and Assignment of Certain Executory**
              **Contracts and Unexpired Leases.**

45.     Section 365(a) of the Bankruptcy Code provides that, subject to court approval, a trustee "may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a).  Upon finding that a debtor in possession has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code.  *See Nostas Assocs. v. Costich (In*

*re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

46.    Pursuant to section 365(f)(2) of the Bankruptcy Code, a trustee may assign an executory contract or unexpired lease of nonresidential real property if:

> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

47.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes,* Inc*.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

48.    At the Sale Hearing, the Debtor and the Successful Bidder will present evidence regarding the ability of the Successful Bidder to perform the Assumed Contracts.  Further, any non-Debtor parties to the Assumed Contracts will have the opportunity to evaluate the showing of adequate assurance by the Successful Bidder.  In addition, the Successful Bidder will be obligated to pay any cure costs due and owing to the non-Debtor parties to the Assumed Contracts.  Therefore, based on the evidence presented and arguments made as the Sale Hearing,

the Debtor will seek approval to assume and assign the Assumed Contracts to the Successful

Bidder.

**F.** **The Successful Bidder Should Be Entitled to the Protections**
**of a Good Faith Purchaser Under Section 363(m).**

49.     Section 363(m) states that:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an
> entity that purchased . . . such property in good faith, whether or
> not such entity knew of the pendency of the appeal, unless such
> authorization and such sale were stayed pending appeal.

50.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold

pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal.  By its terms, section

363(m) of the Bankruptcy Code applies to sales of interests in tangible assets, such as the Assets.

51.     The selection of the Successful Bidder will be the product of arm's length, good

faith negotiations between the Debtor and the various bidders and other parties-in-interest.  As

such, the Debtor intends to request a finding that the Successful Bidder is a good faith purchaser

entitled to the protections of section 363(m) of the Bankruptcy Code.  A finding of this nature

will protect the Successful Bidder in the event of an appeal, thereby making the sale process

more attractive to prospective bidders.

**G.** **A Waiver of the Fourteen Day Waiting Period Under**
**Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.**

52.     In order to facilitate the prompt disposition of the Assets, a waiver of the

provisions of Bankruptcy Rules 6004(h) and 6006(d) is appropriate.  Bankruptcy Rule 6004(h)

provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly,

Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory

contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtor requests that the Order be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

53.    The waiver of these provisions will result in a more rapid closing of the Sale, thereby providing greater certainty to prospective Bidders and lessening the expense of the Sale process. Accordingly, a waiver of these provisions is appropriate.

## Consent to Jurisdiction

54.    Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

55.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) Avadel US Holdings, Inc. as the debtor-in-possession lender; (iii) all taxing authorities in the states where the Debtor is located, as well as the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtor to assert jurisdiction over the Debtor or which are reasonably expected by the Debtor to have claims, contingent or otherwise, in connection with the ownership of the Assets, or to have any known interest in the relief requested by the Motion; (iv) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (v) all persons known or reasonably believed by the Debtor to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Assets; (vi) the non-Debtor parties to the Assumed Contracts; (vii) all persons known or reasonably believed to have expressed an interest in acquiring the Assets within the last four (4) months; (viii) the Securities & Exchange Commission; (ix) the Delaware Secretary of State;

(x) the Delaware State Treasury; (xi) the United States Attorney's office for the District of Delaware; (xii) Attorneys General in the states where the Debtor is located; (xiii) any applicable state and local environmental agencies; and (xiv) all parties to any pending litigation involving the Debtor.

## **No Prior Request**

56. No previous application for the relief sought herein has been made to this or any other court.

## Conclusion

57.     WHEREFORE, the Debtor respectfully requests that this Court enter an order granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: February 8, 2019                    GREENBERG TRAURIG, LLP

                                           */s/ Dennis A. Meloro*
                                           Dennis A. Meloro (DE Bar No. 4435)
                                           The Nemours Building
                                           1007 North Orange Street, Suite 1200
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 661-7000
                                           Facsimile:  (302) 661-7360
                                           Email: melorod@gtlaw.com

                                           -and-

                                           Paul J. Keenan Jr. (*pro hac vice* pending)
                                           John R. Dodd (*pro hac vice* pending)
                                           Reginald Sainvil (*pro hac vice* pending)
                                           Greenberg Traurig, P.A.
                                           333 S.E. 2nd Avenue, Suite 4400
                                           Miami, FL 33131
                                           Telephone: (305) 579-0500
                                           Facsimile:  (305) 579-0717
                                           Email: keenanp@gtlaw.com
                                                  doddj@gtlaw.com
                                                  sainvilr@gtlaw.com
                                           -and-

                                           Sara A. Hoffman (*pro hac vice* pending)
                                           Greenberg Traurig, LLP
                                           The MetLife Building
                                           200 Park Avenue
                                           New York, NY 10166
                                           Telephone:  (212) 801-9200
                                           Facsimile:   (212) 801-6400
                                           Email:  hoffmans@gtlaw.com

                                           *Proposed    Counsel    for    the    Debtor
                                           and Debtor-in-Possession*