# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | : |
| | : CHAPTER 11 |
| Avadel Specialty Pharmaceuticals, LLC | : |
| | : Case No. 19-10248 (CSS) |
| | : |
| Debtor. | : Objection Deadline: June 25, 2019 @ 4:00 p.m.[1] |
| | : Hearing Date: July 23, 2019 @ 11:00 a.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE DISCLOSURE STATEMENT ON AN INTERIM BASIS, (B) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN OF LIQUIDATION, (C) APPROVING THE FORM OF BALLOT AND SOLICITATION MATERIALS, (D) ESTABLISHING THE VOTING RECORD DATE, (E) FIXING THE DATE, TIME, AND PLACE FOR THE HEARING ON FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN AND THE DEADLINE FOR FILING OBJECTIONS THERETO, AND (F) APPROVING RELATED NOTICE PROCEDURES (D.E. 204)**

Andrew R. Vara, Acting United States Trustee for Region Three ("U.S. Trustee"), by and through his counsel, hereby objects to the Debtor's Motion for Entry of an Order (A) Approving the Disclosure Statement on an Interim Basis, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan of Liquidation, (C) Approving the Form of Ballot and Solicitation Materials, (D) Establishing the Voting Record Date, (E) Fixing the Date, Time, and Place for the Hearing on Final Approval of the Disclosure Statement and Confirmation of the Plan and the Deadline for Filing Objections Thereto, and (F) Approving Related Notice Procedures (D.E. 204, the "Motion"). In support of the Objection, the U.S. Trustee states as follows:

## INTRODUCTION

---

[1] Extended for the Office of the United States Trustee to July 16, 2019.

1. The Debtor filed the Motion on June 10, 2019. Concurrently, the Debtor filed its Proposed Combined Disclosure Statement and Chapter 11 Plan of Liquidation (D.E. 203, "Combined Plan and Disclosure Statement").

2. Substantially all of the Debtor's assets have been sold as described on pages 6 and 7 of the Combined Plan and Disclosure Statement. The Debtor alleges on page 9 of the Combined Plan and Disclosure Statement that its sole remaining asset is $250,000 in cash, resulting from the sale of the Debtor's assets.

3. The Combined Plan and Disclosure Statement have been filed pursuant to Local Bankruptcy Rule 3017-2, which provides for an expedited confirmation procedure when the plan provides for liquidation with no discharge or third party releases, complies with section 1129(a)(9) of the Bankruptcy Code and the value of the estate is less than $25 million.

## JURISDICTION

4. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. Section 586(a)(3)(B) charges the U. S. Trustee with: "monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under sections 1125 and 1128 of such title, comments with respect to such plans and disclosure statements." Section 586(a)(3)(G) mandates that the U.S. Trustee monitor "the progress of cases under title 11" and further requires that the U.S. Trustee take "such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress."

5. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard in this matter.

## STATEMENT OF FACTS

6.     The case was filed on February 6, 2019. There is no Official Committee of Unsecured Creditors as there was insufficient creditor interest to appoint a committee.

7.     Substantially all assets of the Debtor have been sold as described on pages 6 and 7 of the Combined Plan and Disclosure Statement. The Debtor alleges on page 9 of the Combined Plan and Disclosure Statement that its sole remaining asset is $250,000 in cash, resulting from the sale of the Debtor's assets.

8.     The Combined Plan and Disclosure Statement do not disclose the amount of outstanding and unpaid professional fees or other unpaid administrative expenses.

9.     The Combined Plan and Disclosure Statement proposes to pay administrative and priority claims in full, provides Miscellaneous Secured Claims with payment in full or a return of collateral. The Plan proposes to pay a dividend to general unsecured creditors of approximately 16.76%.[2]

10.    The Debtor filed its Monthly Operating Report for the month of May 2019 on July 1, 2019 (D.E. 220, "MOR"). Page 6 of the MOR discloses cash on hand as of May 31, 2019 in the amount of $771,189.24 plus professional fee retainers of $163,526.50, and other assets valued at $2,008,319.01, for total current assets of $2,943,034.75, the vast majority of which are denoted as Accounts Receivable or Other Current Assets (other receivables). The same page of the MOR also discloses post-petition liabilities of $2,727,177.25, including an aggregate of $1,103,322.40 in accounts payable and accrued Chapter 11 Professional fees. The excess of current assets over current liabilities is $215,857.50, an amount less than the approximately

---

[2] As set forth on page 10 of the Combined Plan and Disclosure Statement. This percentage is the quotient of dividing $250,000 by $1,491,799. Footnote 6 on the same page indicates that the DIP Claims are *pari passu* with general unsecured claims. The MOR reports that the DIP Claim is $407,000. What is not disclosed is whether the DIP Claim is included or not included in the general unsecured claim total. If it is not included, then the projected dividend dilutes from 16.76% to 13.17% by dividing $250,000 by $1,898,799. This point requires clarification.

$250,000 that the Combined Plan and Disclosure Statement proposes to be paid to general unsecured claims.

11.     No Liquidation Analysis was filed with the Combined Plan and Disclosure Statement.

12.     This is a liquidating plan for a non-individual debtor.  Pursuant to Section 1141(d)(3) of the Bankruptcy Code, a liquidating non-individual debtor is not entitled to a discharge.  Some of the Plan provisions purport to effectuate or imply the equivalent of a discharge in a liquidating case.  For example, Plan 2.3.11 states in pertinent part:  "However, the releases and injunctions provided for under the Plan, when coupled with the permanent dissolution of the Debtor, have an effect that is similar in some respects to a full discharge." Section 13.3 provides that the Plan is a settlement pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 ("FRBP") although no express parties to any settlement have been identified.

13.     The Plan provides for third party releases in favor of non-debtor parties.  The Debtor is not defined as a Released Party. The Combined Plan and Disclosure Statement do not discuss any of the factors that would support providing any third party with a release.

## ARGUMENT

### A. The Disclosure Statement Is Inadequate

14.     Section 1125 of the Bankruptcy Code prohibits solicitation of votes on a reorganization plan prior to court approval of a written disclosure statement containing "adequate information." *See* § 1125(b).

15.     "Adequate information" is defined in section 1125 as being:

information of a kind, and in sufficient detail, as far as is reasonably

4

> practicable in light of the nature and history of the debtor and the condition of debtor's books and records, that would enable a reasonable hypothetical investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125(a)(1).

16. "Investor typical of holders of claims or interests of the relevant class" is defined in section 1125 as being an investor having:

> (A) a claim or interest of the relevant class;
> (B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and
> (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

11 U.S.C. § 1125(a)(2).

17. "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). The "adequate information" requirement is designed to help creditors in their negotiations with Debtors over the plan. *See Century Glove, Inc. v. First American Bank*, 860 F.2d 94 (3d Cir. 1988).

18. Section 1129(a)(2) conditions confirmation of a plan upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. §1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d. Cir. 2000).

19. The seminal case of *In re Scioto Valley Mortg. Co.*, 88 B.R. 168 (Bankr. S.D. Oh. 1988) contains a list of items that should be included in a disclosure statement, including but not limited to a complete description of the available assets and their value; the source of information

5

provided; a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; a summary of the plan; an estimate of all administrative expenses, including professional fees; any financial information relevant to a determination to accept or reject the plan; the actual or projected value of any avoidable transfers. The Disclosure Statement is woefully deficient in all of these areas.

20. The Combined Plan and Disclosure Statement are deficient in providing adequate information. Section 2.5.2 of the Combined Plan and Disclosure Statement is entitled "Best Interests of Creditors Test". Other than reciting conclusory allegations without presenting any supporting evidence that the Combined Plan and Disclosure Statement may provide an equal or better result than a Chapter 7, no facts have been presented that would permit any person to determine whether or not this is the case. The Combined Plan and Disclosure Statement were filed without a liquidation analysis. Except for the statement previously noted that there is only $250,000 available for distribution to general unsecured creditors, there is no showing of funds available for distribution, and no comparison of the costs of administration of the proposed plan versus a Chapter 7 liquidation proceeding.

21. Without a proper liquidation analysis attached as an exhibit to the Combined Plan and Disclosure Statement, no one will be able to determine the extent to which the Combined Plan and Disclosure Statement may be able to pay in full all administrative and priority claims as required by the Bankruptcy Code, and no one will be able to determine whether to vote for or against the Combined Plan and Disclosure Statement. Because of this failure there will also be an inadequate record to support a finding that the Combined Plan and Disclosure Statement is feasible.

22. In addition to the defects in disclosure noted in the preceding paragraph, the disclosures are inconsistent with the facts disclosed in the MOR. To satisfy the adequate information standard with respect to these disclosures, the Debtor needs to provide a liquidation analysis and creditors must have the opportunity to review and comment upon the same before it is approved by the Court. The Debtor also needs to amplify its discussion by reconciling the information disclosed in the MOR with the Combined Plan and Disclosure Statement.[3]

23. A number of statements in the Combined Plan and Disclosure Statement are misleading or incorrectly state the law and to this extent also render the disclosures in the Combined Plan and Disclosure Statement inadequate. Section 2.3.5 of the Combined Plan and Disclosure Statement states that a voting class will accept the Plan: "…if no votes are received by the Voting Agent from holders of Claims in that Class. ***Therefore, if you are entitled to vote on the Plan, but fail to do so, your Class may be deemed to accept the Plan.*** " (Emphasis in original). Bankruptcy Code Section 1126(c) provides that a class of claims accepts a plan if two-thirds in amount and more than one-half in number vote to accept the Plan. There is no statutory provision deeming that a class accepts a plan if no one in the class votes for it. This language should be stricken.

24. The Combined Plan and Disclosure Statement contain a number of places where, although the Debtor is not entitled to a discharge, purport to provide the equivalent of a discharge to the Debtor. Section 2.3.11 contains the following language: "The binding effect of the Plan

---

[3] The U.S. Trustee observes that the MOR is signed under penalty of perjury. The Combined Plan and Disclosure Statement is not. See also Section 2.7.4 of the Combined Plan and Disclosure Statement where the Debtor states that: "…the number and amount of Administrative Expense Claims, Priority Tax Claims, and other Priority Claims are presently unknown…" The MOR contains disclosures of Administrative Expenses and the Debtor's Schedules will have scheduled any potential priority tax or other priority claims. If the Debtor cannot provide meaningful estimates of these claims at this time, the Proposed Combined Plan and Disclosure Statement should not be approved until the Debtor can do so.

expressly covers all such persons and entities regardless of whether any such holder of a Claim or interest has voted, failed to vote, failed to opt out of any proposed releases and injunctions provided in the Plan, or has any right to a Distribution…However, the releases and injunctions provided under the Plan, when coupled with the permanent dissolution of the Debtor, have an effect that is similar in some respects to a full discharge."

25. Section 13.3 of the Combined Plan and Disclosure Statement purports to approve the Combined Plan and Disclosure Statement as a Settlement subject to the standards of FRBP 9019 and impose the settlement upon all creditors and parties in interest, regardless of whether or not the affected party has expressly agreed to a settlement, has voted for or against the Combined Plan and Disclosure Statement or otherwise. This is a discharge which in its present form should be stricken or revised as is discussed further below.

26. Section 2.5 of the Combined Plan and Disclosure Statement discloses that the Debtor will seek to "cramdown" the plan if a voting Class votes to reject the Plan. This statement is incomplete because it fails to disclose that the prerequisite to being able to proceed with "cramdown" is that at least one impaired class of claims has accepted the plan as required by Bankruptcy Code Section 1129(a) (10). This information should be included in Section 2.5 of the Combined Plan and Disclosure Statement to make the statement complete.

27. The Plan provides releases by the Debtors and their estates of many non-debtor parties. Pursuant to this Court's decision in *Tribune*, 464 B.R. 126 (Bankr. D. Del. 2011), and *Washington Mutual,* 442 B.R. 314 (Bankr. D. Del. 2011), among others, the five factors set forth in In re *Zenith Elecs. Corp.,* 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) should be considered to

determine whether, notwithstanding § 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities. *See Tribune* 464 B.R. at 186; *Wash. Mut.*, 442 B.R. at 346; *In re Spansion,* 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004).

28. In the present case, Combined Plan and Disclosure Statement do not address whether any of the *Zenith* factors are met for any of the parties who will receive releases from the Debtors or claimants. Absent a showing, and appropriate finding by the Court, that each proposed Released Party or Protected Party has made a substantial contribution to the Plan,[4] and that the other elements of *Zenith* have been met, the releases given by the Debtors render the Plan not confirmable.

### B. The Debtor Is Not Entitled to a Discharge

29. Section 13.3 of the Combined Plan and Disclosure Statement, entitled Compromise and Settlement of Claims, Interests and Controversies reads in pertinent part as follows:

> Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under this Combined Plan and Disclosure Statement, the provisions of this Combined Plan and Disclosure Statement shall constitute a good faith compromise of all Claims, Interests and controversies relating to the relative legal, equitable, and contractual rights of the holders of General Unsecured Claims, Subordinated Claims, and Equity Interests in the Debtor with respect to Distributions from the Debtor's Estate.
>
> The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of all compromises and settlements embodied in the Plan, as well as a finding by the Bankruptcy Court that such compromises and settlements are in the best interests of the Debtor, its Estate, and Holders of Claims are fair, equitable, and reasonable, provided that, pursuant to section 1141(d)(3) of the

---

4 An example of a "substantial contribution" can be found in *Coram*, where this Court, after examining the *Zenith* factors, allowed the debtors to release noteholders who had contributed $56 million in funding to the plan, which funds allowed the debtors to repay in full all creditors other than the noteholders, as well as make a significant distribution to the debtors' shareholders. 315 B.R. at 335.

9

Bankruptcy Code, and notwithstanding anything to the contrary in this Plan, the Debtor shall not receive a discharge of indebtedness.

27. A chapter 11 plan may not be confirmed unless the Court can find that the plan complies with all the provisions of 11 U.S.C. § 1129 (a). Section 1129(a)(1) requires that the plan comply with the applicable provisions of the Bankruptcy Code.

28. A plan proponent bears the burden of proof with respect to each and every element of 11 U.S.C. § 1129 (a). *See In re Genesis Health Ventures, Inc.,* 266 Bankr. 591 (Bankr. Del. 2001).

29. The Combined Plan and Disclosure Statement directly contradict Section 1141(d)(3) of the Bankruptcy Code, by providing the Debtor with the equivalent of an improper discharge.

30. Section 1141(d)(3) of the Bankruptcy Code states:

The confirmation of a plan does not discharge a debtor if-
    (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
    (B) the debtor does not engage in business after consummation of the plan; and
    (C) the debtor would be denied a discharge under Section 727(a) of this title if the case were a case under chapter 7 of this title.

31. The Combined Plan and Disclosure Statement is a liquidating plan that will result in the distribution of all remaining assets of the Debtor. Except for activities being conducted in connection with the wind down of the Debtor's financial affairs, the Debtor is no longer in business.

32. The Debtor is a corporate Debtor and would not be entitled to a discharge under Section 727(a)(1), which provides: "The court shall grant the debtor a discharge, unless – (1) the debtor is not an individual."

33. Thus, all three criteria of Section 1141(d)(3) are met, and the Debtor is not entitled to a discharge.

34. The Combined Plan and Disclosure Statement provides the functional equivalent of a discharge in the following ways.

35. Section 13.3 treats the Combined Plan and Disclosure Statement as a "good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest".

36. The terms satisfaction and release, or the phrase "complete settlement" are synonyms of the term discharge. The Ballentine's Law Dictionary definition of satisfaction is: "The discharge of an obligation; the payment of a debt. A fulfillment of needs. A performance of the terms of an accord." (Ballantine's Law Dictionary 2010). Section 13.3 acts as a discharge and is not appropriate in a liquidating plan except as to any creditor who has expressly agreed to a settlement.[5] Pursuant to 11 U.S.C. § 1141(d)(3), the Debtor is not entitled to this relief. This is an attempt to rewrite the Bankruptcy Code. A plan may not rewrite the Bankruptcy Code. *See In re Beyond.com*, 289 Bankr. 138 (Bankr. N.D. CA. 2003). For the Debtor to provide for a discharge while in the same sentence stating it is not receiving a discharge is utterly disingenuous.

37. Section 1123(b)(3)(A) of the Bankruptcy Code permits a plan proponent to propose: "…the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." This provision does not authorize a plan proponent to settle claims against the debtor or estate.

---

[5] Here, there is no disclosure that the Debtor has entered into an express settlement with any creditor. Such a clause may be acceptable as to any such creditor but not as to any creditor who has not expressly agreed to compromise its claim.

38. A Debtor may not do by indirection what it cannot do directly. This principle was most recently restated by the Supreme Court in the case of Law v. Siegel, 571 U.S. 415 (2014). In discussing the principle that Section 105(a) of the Bankruptcy Code may not be used to override explicit mandates of the Bankruptcy Code, the court noted: "That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere." 571 U.S. at 421. Thus here, the attempt to invoke Section 363 and FRBP 9019 to otherwise circumvent the provisions of Chapter 11 and Section 1141(d)(3) is inappropriate.

39. Sections 1129 (a) (1) and (7) of the Bankruptcy Code require a debtor to make distributions pursuant to the priorities of the Bankruptcy Code. The distributions under the Combined Plan and Disclosure Statement are pursuant to the priorities set forth in Chapter 11 and in Section 726 of the Bankruptcy Code. Section 1141(d)(3) prohibits the a debtor from receiving a discharge, except as to a particular creditor who may expressly agree to a discharge. The Debtor cannot demand or extract, through artful drafting, a discharge, or release in exchange for performing its required duties under the Code particularly when the Debtor is not entitled to a discharge as a matter of law.

## CONCLUSION

40. The Motion should not be granted. The Combined Plan and Disclosure Statement contains numerous material omissions which render it inadequate in its present form. The document does not contain critical adequate information including a liquidation analysis. The Plan provides for a discharge in a liquidating case.

WHEREFORE, the United States Trustee requests that this Court deny the Motion, and for such and further relief as the Court deems just and proper.

**ANDREW R. VARA,**
**ACTING UNITED STATES TRUSTEE, REGION THREE**

Dated: July 12, 2019        **BY:**  */s/ David Buchbinder*
                                              David L. Buchbinder, Esquire
                                              Trial Attorneys
                                              J. Caleb Boggs Federal Building
                                              844 King Street, Suite 2207, Lockbox 35
                                              Wilmington, DE 19801
                                              (302) 573-6491
                                              (302) 573-6497 (Fax)